Harold **ATKINS**, Plaintiff,

v.

Donna E. **SHALALA**, Secretary of Health and Human Services, Defendant.

Civ. No. 92–1650–FR.

United States District Court,
D. Oregon.

Nov. 17, 1993.

---

Ralph Wilborn, Ralph Wilborn & Etta L. Wilborn, P.C., Eugene, OR, for plaintiff.

Jack C. Wong, U.S. Atty., Craig J. Casey, Asst. U.S. Atty., Portland, OR, Richard H. Wetmore, Sp. Asst. U.S. Atty., Seattle, WA, for defendant.

## OPINION

FRYE, District Judge:

The matter before the court is the petition of the plaintiff, Harold Atkins, to obtain judicial review of the final decision of the Secretary of Health and Human Services (the Secretary) denying his claim for Social Security disability benefits.

## FACTS

On August 13, 1990, Harold Atkins applied for disability insurance benefits under Title II of the Social Security Act. This application was denied initially and upon reconsideration. Thereafter, Atkins requested a hearing before an Administrative Law Judge. On January 21, 1992, Administrative Law Judge, John J. Madden, Jr. (hereafter, the ALJ), held a hearing which included taking the testimony of Atkins, his wife, a medical advisor, and a vocational advisor. On April 6, 1992, the ALJ issued a decision finding Atkins not disabled within the meaning of the Act, and therefore not entitled to disability benefits. This became the final decision of the Secretary when the Appeals Council declined to review the decision of the ALJ.

At the time of the hearing, Atkins was forty-nine years old. He is a high school graduate. His previous employment includes service manager in mobile home sales, street maintenance, mine foreman, detail man, weed control, and bulldozer operator. He alleges that he became disabled on October 31, 1988 as a result of physical and mental impairments.

The medical records relating to Atkins' alleged disabling conditions date back to 1982. It was then that Atkins began to experience medical difficulties that he claims

were the result of working in a gold mine. He was diagnosed as having somatic complaints and abusing cigarettes. He was also told that he had deficient vision in his right eye due to atrophy of the optic nerve and central scotoma. The vision in his right eye is so limited that he can only count fingers at a distance of three feet.

Atkins was seen by several other medical providers from 1982 through 1991. A review of the voluminous medical and psychological evidence in the record indicates that Atkins has had various diagnoses as follows:

*1982–1983 Diagnoses:* (1) right optic atrophy, of unknown etiology, Dr. Hopkins, Transcript and Administrative Record (hereafter, TR) at 163–164; (2) right optic atrophy, spastic colitis, and a possible emotional disturbance, Dr. DiRaimondo, TR at 167; (3) schizophrenia, paranoid type, Ph.D. Kalis, TR at 177; (4) a thought disorder, including substantial paranoid ideation, Dr. Hirschfeld, TR at 196.

*1989 Diagnoses ("The Utah Evaluation"):* (1) migraine headaches and optic neuropathy of the right eye, Dr. Digre, TR at 220; (2) anxiety disorder NOS with depressive features and schizoid traits, Ph.D. Currey, TR at 213; (3) irritable bowel syndrome, seborrheic keratoses of the abdominal wall, dental problems, idiopathic right optic neuropathy, anxiety disorder NOS, with depressive features and schizoid traits, Dr. Dillon, TR at 227.

*1990 Diagnoses:* (1) prostatitis, irritable bowel syndrome, and anxiety disorder, Dr. Bechtel, TR at 238; (2) osteoporosis to an extent unusual for one of Atkins' age, Dr. Meisenheimer, TR at 248.

*1991 Diagnoses:* (1) a very minor thoracolumbar curvature of the spine, Dr. Longstreth, TR at 349; (2) right optic neuritis, probable compensation neuroses, and musculoskeletal pain without objective findings, Dr. Burton, TR at 268; (3) multiple somatic complaints, anxiety without major depression, impaired ability to withstand stress and pressures of the workplace, Dr. Hitz, TR at 271; (4) optic nerve damage, chronic toxic encephalopathy,[1] Dr. Morton, TR at 274; (5) organic personality syndrome, a persistent personality disorder with a mild disruption from a neurological perspective, Ph.D. Kurlychek, TR at 291–293.

At the hearing held on January 21, 1992, Atkins testified that he had terminated his job in 1985 because of headaches, and had terminated his job at Safari Motor Coach in 1988 because of difficulty in understanding job requirements and working at the pace required. He testified that he suffers daily from migraine headaches and back pain, but that chiropractic manipulation of his neck helps control the migraine headaches. Atkins also testified that he has no energy and is forgetful. His arms and legs go numb if he sits. He must walk slowly and for short distances and cannot carry anything. He has no social activities other than an occasional family visit. Atkins' wife confirmed that Atkins is forgetful and stated that he spends most of the day in bed.

Dr. Janice Green, a psychologist, testified at the hearing as a medical advisor. Dr. Green stated that the Utah Evaluation (*See* 1989 Diagnoses, *supra*) and the examination by Dr. Robert T. Kurlychek (*See* 1991 Diagnoses, *supra*) supported a finding of a mild cognitive deficit. Dr. Kurlychek stated that Atkins has low average intelligence, except in the verbal area, a situation not usually found in conditions involving organic brain damage. Based on certain answers Atkins gave on a test designed to rate mental impairment (the MMPI), Dr. Green felt that the responses Atkins gave were exaggerated. Dr. Green stated that while there were a great number of somatic problems demonstrated in the record, she nonetheless determined that Atkins could perform simple repetitive tasks.

Dr. Terry V. Lesh, a vocational expert, rated the jobs Atkins had performed as to skill level and exertional requirements. He classified the job of industrial cleaner as light and unskilled. The ALJ then asked Dr. Lesh to assume a person of Atkins' age, education, and vocational background who

---

1. This is a cognitive impairment of the central nervous system. It should be noted that Dr. Morton rejected the previous diagnoses of schizophrenia arguing that Atkins did not have a functional psychiatric disorder, but rather this cognitive impairment.

was limited to medium exertion and could perform only simple repetitive tasks. Dr. Lesh testified that this hypothetical person could perform work as an industrial cleaner or janitor. Dr. Lesh also identified several jobs requiring light exertion which could be performed by the hypothetical person. Dr. Lesh testified that if the additional limitations of standing ten to fifteen minutes and walking ten to fifteen minutes and napping two or three times a day were added, there would be no jobs that Atkins could perform. Dr. Lesh testified that if the limitations stated by Dr. Kurlychek were assumed instead of the hypothetical posed by the ALJ, a person would not be able to function outside of a sheltered workshop.

Based on the evidence before him, the ALJ found that Atkins was limited to work requiring only light exertion and could perform work that involved only simple repetitive tasks. The ALJ concluded that under step four of the sequential analysis, Atkins could return to his former occupation as an industrial cleaner. In the alternative, the ALJ concluded that under step five of the sequential analysis, Atkins could perform the requirements of at least three other jobs which exist in significant numbers in the national economy: agricultural sorter, glazing machine operator, and hospital cleaner.

Atkins submitted additional evidence in conjunction with his request for review of the decision of the ALJ by the Appeals Council. In a report dated April 10, 1992, Dr. Kurlychek stated that Atkins had been undergoing therapy and continued to have problems with interpersonal relationships. In September, 1992, Dr. Kurlychek was provided with all of the exhibits from the hearing and the decision of the ALJ. He reviewed the material and determined that his opinion as to Atkins' limited mental functioning was not changed. Dr. Kurlychek took issue with the findings of the ALJ and the testimony of Dr. Green.

The Appeals Council reviewed the additional evidence and the letter of Dr. Kurlychek and found no reason to set aside the decision of the ALJ.

## APPLICABLE STANDARD

The court will uphold the decision of the ALJ provided that the findings of the ALJ are supported by substantial evidence and the ALJ applied the correct legal standards. *Drouin v. Sullivan,* 966 F.2d 1255, 1257 (9th Cir.1992). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)).

An ALJ must make comprehensive and analytical findings, including "a statement of subordinate factual foundations on which ultimate factual conclusions are based, so that a reviewing court may know the basis for the decision. This is necessary so that the court may properly exercise its responsibility under 42 U.S.C. § 405(g) to determine if the Secretary's decision is supported by substantial evidence." *Baerga v. Richardson,* 500 F.2d 309, 312 (3d Cir.1974), *cert. denied,* 420 U.S. 931, 95 S.Ct. 1133, 43 L.Ed.2d 403 (1975).

## SUMMARY OF APPLICABLE SOCIAL SECURITY REGULATIONS

The Social Security Act requires that certain individuals who are "under a disability" shall receive disability benefits. 42 U.S.C. § 423(a)(1)(D). Since 1978, the Secretary has implemented the statutory definition of disability by applying a five-step sequential inquiry into whether or not an applicant for benefits should be considered "disabled" and thus eligible for benefits. 20 C.F.R. § 404.1520. Known as "sequential analysis," this system is comprised of elements of both the medical and vocational requirements of the definition of disability. It consists of a series of five questions asked in a specific order. These questions involve 1) whether the claimant is currently working; 2) whether the impairment is severe; 3) whether the impairment meets or equals a listed impairment; 4) whether the impairment prevents the claimant from performing past relevant work; and 5) whether the impairment prevents the claimant from doing any other work. 20 C.F.R. § 404.1520(a)–(f).

## CONTENTIONS OF THE PARTIES

Atkins contends that the ALJ's decision was not supported by substantial evidence because 1) the ALJ did not provide clear and convincing reasons to reject the conclusion of Dr. Kurlychek that Atkins could not perform any job outside of a sheltered workshop setting; 2) the ALJ failed to provide specific findings as to why he rejected the testimony of Atkins and his wife; 3) under step four of the sequential analysis, the ALJ failed to apply the proper job classification as defined by the *Dictionary of Occupational Titles;* and 4) under step five of the sequential analysis, the ALJ failed to consider the visual impairment of Atkins in determining whether Atkins could perform jobs which exist in significant numbers in the national economy. Atkins does not contest the application of steps one, two or three of the sequential analysis.

The Secretary claims that the decision of the ALJ was supported by substantial evidence on all of these issues.

## ANALYSIS AND RULING

### 1. *The Testimony of Dr. Kurlychek*

█ In reviewing an application for disability benefits, the Secretary cannot disregard any uncontroverted medical opinion without stating clear and convincing reasons for doing so. *Fife v. Heckler,* 767 F.2d 1427 (9th Cir.1985); *Bellamy v. Secretary of Health and Human Services,* 755 F.2d 1380 (9th Cir.1985); *Bilby v. Schweiker,* 762 F.2d 716 (9th Cir.1985). Atkins contends that the opinion of Dr. Kurlychek is uncontroverted and that the ALJ could not have disregarded it without providing clear and convincing reasons for doing so. The Secretary contends that the opinion of Dr. Kurlychek was controverted by the opinions of other medical providers.

█ There are a number of psychological and psychiatric reports in the record which present conflicting views. Dr. Christine A. Currey made a neuropsychological evaluation of Atkins in April, 1989. Dr. Currey found that Atkins had an "Anxiety Disorder NOS with depressive features," "Schizoid Traits," and other "Psychological factors affecting physical condition." TR at 213. Dr. Currey determined that Atkins could benefit from vocational rehabilitation. The ALJ found that this medical opinion contradicted Dr. Kurlychek's findings that Atkins' cognitive difficulties were the result of neurotoxic exposure and could not benefit from vocational rehabilitation. The records of Dr. Currey were considered by Dr. Kurlychek prior to the formulation of his diagnosis.

Atkins argues that the opinions of Dr. Currey and Dr. Kurlychek are not in conflict because Dr. Kurlychek reviewed the entire record following the decision of the ALJ, and he did not change his diagnosis. The fact that Dr. Kurlychek rejected Dr. Currey's conclusions a second time, after a complete review of the record, does not change the fact that there are two conflicting diagnoses. Therefore, Dr. Kurlychek's opinion is not uncontroverted. As a result, the ALJ is free to chose between the conflicting medical evidence and to reject the diagnosis of Dr. Kurlychek.

### 2. *The Testimony of Atkins and his Wife*

█ Under Ninth Circuit law, the Secretary may choose to disregard or discredit subjective testimony by making specific findings which support that decision. *Gamer v. Secretary of Health and Human Services,* 815 F.2d 1275 (9th Cir.1987). Atkins claims that no specific findings were made which are sufficient to support the rejection of his testimony. With regard to the testimony of Atkins, the ALJ stated that:

> The claimant has consistently been reported as a vague medical historian, vague in describing his symptoms, and of exaggerating his symptoms. Despite his complaints that he has suffered from the symptoms alleged since 1981–1982 he has worked at several jobs since. This evidences the fact that the claimant was not physically disabled, but also that he did not consider himself disabled. The claimant's cognitive functioning is not deteriorating and his psychological functioning is not worsening. It appears that the claimant's goals are now focused on obtaining Social Security disability and reinstatement of his workers' compensation benefits. This pro-

vides him with an incentive to exaggerate his testimony. For these reasons and those articulated in this decision, the undersigned must conclude that the claimant is not a credible witness.

ALJ's Decision, p. 14 (TR at 29).

 Atkins claims that these findings are insufficient because the ALJ failed to consider that he suffers from somatoform disorder. Somatoform disorder is a psychological impairment which causes a person to involuntarily experience pain and other symptoms at a level greater than might be expected based on other objective evidence. In making his determination as to the credibility of Atkins, the ALJ did not rely solely on the objective medical evidence which might not otherwise reflect the psychological experience of pain in somatoform disorder. Instead, the ALJ relied on psychological testing of Atkins, which indicated that the psychological impairment from which he suffers has not worsened since 1982, yet he has been employed at a number of jobs since 1982. The ALJ concluded that despite evidence that the psychological condition of Atkins has not worsened, and presumably his somatoform disorder has not worsened, Atkins' perception of his disability has changed. Because the testimony of Atkins is inconsistent with the results of his psychological tests, the ALJ reasonably determined that Atkins was exaggerating his perception of disability in order to obtain disability benefits. The court will not disturb the credibility findings of the ALJ where his decision spells out specific reasons for those findings.

With regard to the testimony of Atkins' wife, the ALJ concluded: "The claimant's wife focussed [sic] her testimony on the claimant's forgetfulness and lack of memory. As discussed earlier, psychological testing does not support the degree of memory impairment alleged. Accordingly, the testimony by the claimant's wife provides little in the way of probative evidence." ALJ's Decision, p. 14 (TR at 29). The ALJ made a specific finding when he determined that the testimony of Atkins' wife was contradicted by the results of the psychological tests taken by Atkins. This finding of the ALJ is suffi-cient for him to have given little credence to the testimony of Atkins' wife.

3. *Step Four of the Sequential Analysis*

Based on evidence presented at the hearing, the ALJ made the following findings:

5. The claimant has the residual functional capacity to perform work related activities except that he is limited to work on the light exertional level and routine tasks with simple, written or oral instructions that are repetitive and easily learned. The tasks should be consistent from day to day (20 CFR 404.1545).

6. The claimant's past relevant work as an industrial cleaner did not require the performance of work related activities precluded by the above limitation(s) (20 CFR 404.1565).

7. The claimant's impairments do not prevent the claimant from performing his past relevant work as an industrial cleaner.

ALJ's Decision, p. 15 (TR at 30).

 In making finding number 6, the ALJ relied on the testimony of Dr. Lesh, the vocational expert. The determination of the ALJ that Atkins could perform his past relevant work as an industrial cleaner conflicts with the exertional level category established for the position of industrial cleaner in the *Dictionary of Occupational Titles*, U.S. Department of Labor (4th ed. 1991). It was error for the ALJ to rely on the testimony of Dr. Lesh, the vocational expert, which conflicts with the resources of the Secretary. *Terry v. Sullivan*, 903 F.2d 1273 (9th Cir. 1990). In *Terry*, the Ninth Circuit stated: "Just as claimants are bound by SSA regulations, so is the Secretary." *Id.* at 1277 (citations omitted). The court finds that the ALJ erred in applying an exertional level higher than that set by the *Dictionary of Occupational Titles* to determine whether Atkins could return to his former job as an industrial cleaner.

4. *Step Five of the Sequential Analysis*

 The ALJ made alternative findings as to step five of the sequential analysis. At step five, once a claimant shows that he can

no longer perform past relevant work, the burden of persuasion shifts to the Secretary to show that the claimant can engage in other substantial gainful activity. *Bonilla v. Secretary of Health, Educ. and Welfare,* 671 F.2d 1245 (9th Cir.1982). In finding number 8, the ALJ determined that Atkins "can also perform additional jobs such as agricultural sorter, glazing machine operator and hospital cleaner." ALJ's Decision, p. 15 (TR at 30). Atkins argues that the Secretary did not discharge her burden because finding number 8 is not based on substantial evidence and the proper legal standard. Atkins argues that the hypothetical questions posed to the vocational expert did not set forth all of Atkins' limitations, namely his visual impairment.

The ALJ asked Dr. Lesh, the vocational expert, to assume a person of Atkins' age, education, and vocational background who was limited to medium exertion and could perform only simple repetitive tasks. Transcript of Hearing, p. 59 (TR at 446). Based on these criteria, Dr. Lesh determined that the occupation of industrial cleaner was appropriate. The ALJ then inquired as to any positions that are classified as light exertional level positions which could be performed based on the limitations described in the first hypothetical. Dr. Lesh identified the occupations of agricultural sorter, glazing machine operator, and hospital cleaner.

In *Embrey v. Bowen,* 849 F.2d 418 (9th Cir.1988), the Ninth Circuit held that hypothetical questions posed to a vocational expert must set out all of the limitations and restrictions of a particular claimant. The questions posed by the ALJ here did not meet that standard because neither question included the restriction of the visual impairment from which Atkins suffers. Unlike subjective complaints, such as pain or anxiety, Atkins' visual impairment is fully established by the record and was not disputed at the hearing. Under *Embrey,* the ALJ was required to include all of Atkins' limitations following from the physical and psychological conditions identified in step three of the sequential analysis in the hypothetical questions posed to Dr. Lesh. The visual impairment was identified at step three;

therefore, the ALJ was required to include that limitation in the hypothetical questions posed to the vocational expert.

## CONCLUSION

The final decision of the Secretary is vacated, and this case is remanded to the ALJ to render findings as to steps four and five of the sequential analysis in accordance with this opinion.