**Sabrina JOHNSON, Plaintiff–Appellant,**

v.

**Donna E. SHALALA, Secretary of Health and Human Services, Defendant–Appellee.**

No. 93–56607.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 5, 1995.

Decided July 27, 1995.

Joel D. Leidner, Los Angeles, CA, for plaintiff-appellant.

Kaladharan M.G. Nayar, Dept. of Health and Human Services, San Francisco, CA, for defendant-appellee.

Before: FLETCHER, WIGGINS, and FERNANDEZ, Circuit Judges.

FLETCHER, Circuit Judge:

Sabrina Johnson ("claimant") appeals the denial of her claim for social security disability benefits. The final decision of the Secretary of Health and Human Services was affirmed by the district court. We affirm.

## FACTS AND PROCEDURAL HISTORY

On March 3, 1981, claimant injured her back while lifting her child. To be eligible for disability benefits, claimant had to establish permanent disability before the expiration of her disability insurance coverage on December 31, 1986.

### Pre-expiration Medical Evidence

During the first two and one-half years following claimant's injury, she sought medical attention from Dr. Robert Hunt for her lower back three times: one office visit on March 5, 1981 and two CT scans performed in 1981 and 1983. The record does not suggest she was treated by anyone else during this period.

Dr. Hunt did not examine claimant again until October 23, 1986. He reported pain in the claimant's lower spine, decreased range of motion, and the need for claimant to hold onto the wall for support while walking. He diagnosed claimant as having marked narrowing of L5–S1 interspace, and spurring of L3–4–5. He also noted the absence of muscle spasms and reported normal posture, intact sensations, strong and equal muscle power, and strong reflexes.

On November 5, 1986, magnetic resonance imaging (MRI) and a CT scan confirmed the disc space narrowing at L5–S1, and revealed a moderate disc bulge or herniation, hardening of the disc, and pressure on the nerve roots.

On November 18, 1986, neurologist Dr. Rafael examined claimant and found that she "continued to be able to function as a mother and a housekeeper but is in constant pain" and "has learned to 'live with it.'" (Letter from Dr. Rafael to Dr. Hunt.) He noted that prolonged sitting worsened her pain, but using a lordotic pillow and stretching exercises afforded some relief.

Based upon the examinations noted above, Dr. Hunt concluded on December 4, 1986 that because of the condition of her lower back, claimant was "temporarily disabled" and should "continue a program of conservative care."

### Post-expiration Medical Evidence

Claimant's disability insurance coverage expired on December 31, 1986. In April 1988, claimant was involved in an automobile accident which caused her neck discomfort. A doctor's report dated April 14, 1989 stated that claimant reported having lower back

pain which had worsened since her auto accident.

Claimant was reinjured in a second automobile accident on December 4, 1989, "resulting in increased upper back and neck pain" (Dr. Hunt's letter dated July 6, 1990) for which she was treated by Dr. Hunt over the next few months. However, when claimant sought treatment for her lower back, Dr. Hunt reported as interim history that "[t]he patient states that she has aggravated her condition on 12/4/89 at which time she was involved in an automobile [sic] and was rearended." (Dr. Hunt's letter dated July 6, 1990.)

On January 31, 1991, Dr. Hunt prepared a Functional Capacities Evaluation Form which noted that the claimant had the following limitations and abilities: she could frequently lift items less than ten pounds; she could not stand for more than two hours (with normal breaks) in eight hours; she could not sit for more than six hours (with normal breaks) in eight hours; and she had unlimited reaching and handling ability.

Dr. Hunt provided a Supplemental Report on February 12, 1992 stating that claimant was "well known to this office" and concluded that claimant was "for all practical purposes, disabled as a consequence of her lumbar condition ... since the date of her initial evaluation in this office, 10/23/86, and probably before then."

### Testimony at the Administrative Hearing

At the administrative hearing on February 19, 1992, claimant testified that between the date of her injury in 1981 and the expiration of her disability insurance, she experienced pain which radiated from her back down her left leg to the knee, and sometimes down her right leg. She said her condition "did not change" between 1981 and the date of the hearing, but contradictorily complained of aggravation over the last several years. She testified that the pain was unpredictable, prevented participation in numerous recreational and social activities because she could sit only one to one and one-half hours at a time, and it required her to lie down and elevate her feet three to four hours per day.

A vocational expert, Mr. Edward Kurata, also testified at the hearing. He accepted as fact that claimant "could not do [her] previous job" because it required sitting up to two hours or more at a time. Nonetheless, based on the understanding that claimant was limited to sedentary work and had other specified limitations,[1] the expert found that claimant could work as a production assembler or office helper, jobs available in large numbers in the Los Angeles area.

### Procedural History

Claimant filed her application for disability benefits on July 24, 1990, alleging that she became disabled on March 5, 1981. The Social Security Administration denied her application both initially and on reconsideration. At the administrative hearing the ALJ found that claimant suffered from a medically determinable, severe impairment, but that her testimony of debilitating pain was not credible and that she failed to provide reliable medical evidence to show total disability.[2] The ALJ found that although claimant could no longer perform her past work, she was capable of performing certain types of work available in the economy and therefore denied benefits. On appeal to the district court, the parties submitted the case to a magistrate judge on cross-motions for summary judgment. He affirmed the Secretary.

## JURISDICTION

We have jurisdiction pursuant to 28 U.S.C. § 1291 and 42 U.S.C. § 405(g).

---

1. The ALJ asked Kurata to assume that the claimant is limited to sedentary work and that she must change positions or be able in a job that would permit her to change positions after thirty minutes of sitting, and that also because of pain that—and decreased concentration, that she should be limited to doing simple work with of a lower stress nature....

2. Total disability is established if the claimant suffers an impairment listed in or equal to those required by Appendix 1 to Subpart P of the governing regulations. 20 C.F.R. § 404.1501–99 (1994) (hereinafter "Appendix 1").

### STANDARD OF REVIEW

We review district court decisions granting summary judgment *de novo. Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir.1989). The Secretary's denial of disability benefits will be overturned only if it is not supported by substantial evidence, or if it is based on legal error. *Cotton v. Bowen*, 799 F.2d 1403, 1406 (9th Cir.1986).

### DISCUSSION

In determining the ultimate issue of disability, claimant bears the burden of proving she is disabled. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir.1990); *Cotton*, 799 F.2d at 1405. She must prove that she was either permanently disabled or subject to a condition which became so severe as to disable her prior to the date upon which her disability insured status expires. *Morgan v. Sullivan*, 945 F.2d 1079, 1080–81 (9th Cir. 1991); *Vincent v. Heckler*, 739 F.2d 1393, 1394 (9th Cir.1984).

Claimant must produce complete and detailed objective medical reports of her condition from licensed medical professionals. 20 C.F.R. §§ 404.1512(a)–(b), 404.1513(d). As a first step, the medical reports, together with such other evidence as is adduced, must establish that she is disabled to the extent that she cannot return to her former job. It is undisputed here that the claimant satisfactorily showed that her condition precluded return to her former job.

The burden then shifts to the Secretary to identify specific jobs existing in substantial numbers in the national economy that claimant can perform despite her identified limitations. If the limitations are non-exertional and not covered by the grids, a vocational expert is required to identify jobs that match the abilities of the claimant, given her limitations. *See, e.g., Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir.1989) (hypothetical questions to vocational expert must set out all limitations to show ability to perform specific jobs).

Claimant faults the ALJ for discounting the level of her pain. She contends it was much more debilitating than the ALJ admits. She also argues that the ALJ improperly refused to rely on the treating physician's determination that she was permanently and totally disabled by October 23 of 1986. These objections go to the existence and extent of her disability.

She next complains that the ALJ erred in relying on the vocational expert's opinion because he improperly testified that she could perform two types of jobs that he described as "sedentary" whereas the Dictionary of Occupational Titles (DOT) classifies the jobs as "light."

### I.

We look first to whether the ALJ erred in rejecting the treating physician's opinion that the claimant was disabled. The ALJ may reject the opinion only if she provides clear and convincing reasons that are supported by the record as a whole. *Magallanes*, 881 F.2d at 751; *Cotton*, 799 F.2d at 1408. Here she properly found Dr. Hunt's determination conclusory and unsubstantiated by relevant medical documentation.

The ALJ began her opinion by pointing out that the relevant period was limited to the five years between 1981, when claimant first injured her lower back, and 1986, when her disability insurance expired. She then gave specific reasons for rejecting Dr. Hunt's conclusion, contained in an opinion in 1992, that claimant was disabled during the relevant period.

First, the ALJ found that the doctor's retrospective assessment in the letter dated February 12, 1992, was conclusory because it included "no specific assessment of her functional capacity prior to December 31, 1986." A review of Dr. Hunt's assessment itself confirms the absence of any named limitations such as the inability to lift, stoop, walk, stand or sit. The letter states only the diagnosis and then concludes that "the patient's subjective complaints and clinical findings are felt to be entirely consistent" and that she was disabled "for all practical purposes" as of October 23, 1986.

The medical reports during the relevant time period[3] make only limited references to medically observed limitations on functional capacity; therefore they fall short of the substantial medical evidence required to establish a disability listed in or equal to those appearing in appendix 1.[4] We agree with the ALJ that Dr. Hunt's conclusory letter was not substantiated by medical evidence relevant to the period in question.

The ALJ also pointed out that Dr. Hunt's retrospective conclusions of February 12, 1992 and his functional assessment of January 31, 1991 could not properly rely upon medical examinations after April of 1988 to determine disability because the medical reports show that the intervening car accident aggravated claimant's condition. In fact, Dr. Hunt's assessments were made after the second automobile accident had occurred which also aggravated her lower back.

Additionally, Dr. Hunt's retrospective conclusion that claimant was totally disabled by October 23, 1986 contradicts his own contemporaneous finding in 1986 that claimant was only "temporarily disabled" and needed only "a program of conservative care." In light of the facts that claimant's condition improved during the two months preceding Dr. Hunt's characterization of claimant as "temporarily disabled," and that the functional assessments indicating disability were prepared on January 31, 1991, *after* the two exacerbating automobile accidents, the ALJ's conclusion is supported by substantial evidence in the record and the ALJ gave clear and convincing reasons why she disregarded Dr. Hunt's conclusion that the claimant was disabled.

## II

The ALJ did not err in discounting claimant's testimony of excess pain as not credible.

No one challenges the fact that the claimant had some pain caused by documented medical diagnoses. The issue is whether the ALJ erroneously rejected the existence of excess pain.

Pain is subjective in both existence and degree. *Fair v. Bowen,* 885 F.2d 597, 601 (9th Cir.1989). Yet despite the inability to measure it objectively, it can have "severe debilitating effects"—even to the point of disabling a person who does not meet or equal the impairments listed in Appendix 1 and who would not objectively be expected to experience pain to the degree subjectively expressed. 20 C.F.R. § 404.1545(e) ("pain or other symptoms may cause a limitation of function beyond ... the anatomical, physiological or psychological abnormalities considered alone"); *Fair,* 885 F.2d at 601.

■ The regulations state that subjective complaints of pain will not establish disability "unless medical signs or laboratory findings show that a medically determinable impairment(s) is present." 20 C.F.R. § 404.1529(b). However, once an impairment is medically established, the ALJ cannot require medical support to prove the *severity* of the pain. *Bunnell v. Sullivan,* 947 F.2d 341, 343 (9th Cir.1991).

■ The ALJ cannot discount a claim of "excess pain" without making "specific findings justifying that decision." *Fair,* 885 F.2d at 602. These findings must be supported by clear and convincing reasons why the claimant's testimony of excess pain was not credible, and must be supported by substantial evidence in the record as a whole. *See Swenson v. Sullivan,* 876 F.2d 683, 687 (9th Cir.1989).

---

3. These reports include Dr. Hunt's initial examination report of October 23, 1986, Dr. Glenn's evaluation of the CT and MPR tests of November 5, 1986, Dr. Rafael's neurology report of November 18, 1986, and Dr. Hunt's concluding report of claimant's temporary disability which prescribed only "conservative" care.

4. Appendix 1 requires that in order to establish debilitating vertebregenic disorders including herniated nucleus puplosus and spinal stenosis, the claimant must provide detailed orthopedic and neurologic examinations that establish *both*

1. Pain, muscle spasm, and significant limitation of motion in the spine; *and*
2. Appropriate radicular distribution of significant motor loss with muscle weakness and sensory and reflex loss.

Appendix 1, 1.05(C) (emphasis added). Here, during the relevant period, the medical evidence produced by the claimant establishes only pain, some limited range of motion, and negligible sensory loss.

 Here, the ALJ with clear and convincing reasons properly declined to rely on testimony pertaining to current levels of pain long past the relevant insured period. *See Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir.1989). The ALJ repeatedly noted that in spite of her admonition to restrict the testimony of pain to the period between 1981 and 1986, the claimant persisted in testifying to recent pain rather than pain she experienced before the expiration of her insurance. This testimony could not support her claim.

 The ALJ also identified several contradictions between claimant's testimony and the relevant medical evidence and cited several instances of contradictions within the claimant's own testimony. We will not reverse credibility determinations of an ALJ based on contradictory or ambiguous evidence. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir.1984).

In addition to the inconsistencies within claimant's testimony, the ALJ noted the absence of medical treatment for claimant's back problem between 1983 and October 23, 1986, suggesting that if the claimant had actually been suffering from the debilitating pain she claimed she had, she would have sought medical treatment during that time. She cited the doctor's records of the examinations of 1983 and 1986 to show that medical evidence does not support the degree of functional limitation claimed. For example, the ALJ noted that Dr. Hunt prescribed only "conservative treatment" in 1986, suggesting a lower level of both pain and functional limitation.

The ALJ pointed out the conflict between claimant's testimony that pain and medication interfered with her ability to think and the fact that claimant failed to tell her doctor of any mental limitations resulting from her condition. Dr. Rafael's neurological evaluations underscore this contradiction since he concluded in November 1986 that claimant's

"memory, orientation, judgment, intellect and affect are within normal limits."

Lastly, the medical records discredit claimant's assertion that her condition had not changed since 1983. The records support the ALJ's finding that the two automobile accidents exacerbated the pain in her lower back.

## III

The unusual aspect of this case is the vocational expert's apparent deviation from the DOT's definition of job classifications. Claimant asserts that this prejudiced her and that it was error for the ALJ to rely on the expert's opinion in her determination that there are jobs in the economy that the claimant can perform.

The ALJ directed the vocational expert to assume that claimant was restricted to sedentary work and had a number of non-exertional limitations.[5] The expert testified that claimant could not perform her former job, but could work either as an office worker or production assembler. Both occupations are classified in the DOT[6] as "light" work, considered a more strenuous category than "sedentary."

 Claimant argues that under *Terry v. Sullivan*, 903 F.2d 1273, 1277 (9th Cir.1990), the DOT's classification of those occupations as "light" precludes a finding that a person restricted to sedentary work can perform them. In *Terry*, we held that without reason and support in the record, the ALJ erred in finding certain identified occupations "semi-skilled" when the DOT and the Regulations classified them as "unskilled." *Id.* at 1278. We overturned the ALJ's decision that contradicted the job descriptions in the DOT because the Secretary offered "no explanation why those job descriptions (on which the agency regularly relies) do not apply in this case." *Terry*, 903 F.2d at 1278.[7]

---

5. *See supra* note 1.

6. The DOT is "the Secretary's primary source of reliable job information." *Terry*, 903 F.2d at 1276. *Cf.*, 20 C.F.R. § 404.1566(d)(1). One purpose of the DOT is to classify identified job titles by their exertional and skill requirements. *Terry*, 903 F.2d at 1276.

7. In this case the ALJ's explanation is satisfactory because the ALJ made findings of fact that support a deviation from the DOT. The ALJ noted that the vocational expert described the characteristics and requirements of jobs in the local area. Since the DOT is not invariably controlling, particularly where local job charac-

The claimant would have us read *Terry* too broadly. She argues that *Terry* entirely precludes a finding that a claimant with limitations that classified her as restricted to sedentary work could perform some types of jobs that are classified as "light" in the DOT.[8] To the contrary, *Terry* supports the proposition that although the DOT raises a presumption as to the job classification, it is rebuttable. We make explicit here that an ALJ may rely on expert testimony which contradicts the DOT, but only insofar as the record contains persuasive evidence to support the deviation. Here, there was persuasive testimony of available job categories in the local rather than the national market, and testimony matching the specific requirements of a designated occupation with the specific abilities and limitations of the claimant. This is entirely consistent with *Villa v. Heckler*, 797 F.2d 794, 798 (9th Cir.1986), where we held that the claimant could "overcome the presumption that the *Dictionary*'s entry for a given job title applies to him by demonstrating that the duties in his particular line of work were not those envisaged by the drafters of the category." *Id.* (citing *DeLoatche v. Heckler*, 715 F.2d 148, 151 (4th Cir.1983)).

The DOT "is not the sole source of admissible information concerning jobs." *Barker v. Shalala*, 40 F.3d 789, 795 (6th Cir.1994). "The Secretary may take administrative notice of any reliable job information, including ... the services of a vocational expert." *Whitehouse v. Sullivan*, 949 F.2d 1005, 1007 (8th Cir.1991) (internal quotation marks and citations omitted).

The DOT itself states that it is not comprehensive, but provides only occupational information on

jobs as they have been found to occur, but they may not coincide in every respect

with the content of jobs as performed in particular establishments or at certain localities. DOT users demanding specific job requirements should supplement this data with local information detailing jobs within their community.

DOT at xiii; *see also Barker v. Shalala*, 40 F.3d at 795. Introduction of evidence of the characteristics of specific jobs available in the local area through the testimony of a vocational expert is appropriate, even though the job traits may vary from the way the job title is classified in the DOT.

The Sixth Circuit recently held in a case similar to ours, that "the ALJ was within his rights to rely solely on the vocational expert's testimony. The Social Security regulations do not require the Secretary or the expert to rely on classifications in the *Dictionary of Occupational Titles.*" *Conn v. Secretary of Health and Human Services*, 51 F.3d 607, 610 (6th Cir.1995). In *Conn*, the expert described certain jobs as sedentary which the DOT classified as light or medium. Nevertheless, the court held that "the ALJ may rely on the testimony of the vocational expert even if it is inconsistent with the job descriptions set forth in the *Dictionary.*" *Id.* We agree.

In our case, the expert testified specifically about the characteristics of local jobs when he described the 30,000 office helper and production assembler jobs existing in the Los Angeles County area and found their characteristics to be sedentary. Therefore, in light of the DOT's own disclaimer and the administratively recognized validity of expert testimony by qualified individuals, the expert testimony may properly be used to show that the particular jobs, whether classified as light or sedentary, may be ones that a particular claimant can perform. In fact it seems an eminently appropriate use of the vocational expert's knowledge and experience.

The regulations, themselves, provide that the DOT classifications are rebuttable. They

---

teristics are concerned, the ALJ provided findings that fully satisfy this aspect of *Terry*. *See infra;* DOT at iii; *Barker v. Shalala*, 40 F.3d 789, 795 (6th Cir.1994).

**8.** Although claimant did not cite the following cases in her brief, we are cognizant of the determinations by other courts which have given great weight to the DOT by holding that where the

testimony of a vocational expert is in conflict with the DOT, the latter controls. *Smith v. Shalala*, 46 F.3d 45, 47 (8th Cir.1995); *Tom v. Heckler*, 779 F.2d 1250, 1255–56 (7th Cir.1985); *Mimms v. Heckler*, 750 F.2d 180, 186 (2d Cir.1984); *Atkins v. Shalala*, 837 F.Supp. 318, 324 (D.Or.1993). We agree that the DOT carries great weight, *Terry*, 903 F.2d at 1276, but we disagree that in all cases it trumps expert testimony.

recognize vocational experts and several published sources other than the DOT as authoritative. 20 C.F.R. §§ 404.1566(d)(2)–(5), (e) (the use of vocational experts is particularly important where "the issue in determining whether you are disabled is whether your work skills can be used in other work and the specific occupations in which they can be used, or there is a similarly complex issue"); *see also Barker*, 40 F.3d at 795. Here, the ultimate issue of whether the claimant is disabled turns on whether her limitations are such that she cannot perform any work available in the economy. The testimony of the vocational expert was particularly important in establishing precisely which available jobs the claimant could perform. *See Sample v. Schweiker*, 694 F.2d 639, 643 (9th Cir.1982) (essential role of a vocational expert is to "translate[ ] factual scenarios into realistic job market probabilities"). It was therefore proper for the ALJ to rely on expert testimony to find that the claimant could perform the two types of jobs the expert identified, regardless of their classification by the DOT as "light."

The expert's opinion was based on an understanding of the limitations of the claimant even more generous to her in the hypothetical than the ALJ's findings, particularly with respect to pain,[9] and his knowledge as an expert of the existence and characteristics of jobs available in the Los Angeles area. Therefore his testimony that claimant could work in two specific types of jobs despite her limitations was sufficient to overcome the presumption drawn from the DOT that a person limited to some sedentary work could not perform jobs with titles classified as "light." *See Sample*, 694 F.2d at 643–44 (as long as the hypothetical question posed by the ALJ is properly based on all relevant

evidence in the case, the testimony of the vocational expert is valuable). In response to the ALJ's hypothetical, the vocational expert testified that a production assembler and office helper are low stress occupations with sit/stand options which require lifting of objects weighing mostly from one to five pounds. Because these demands do not exceed the abilities the ALJ found the claimant to possess, the vocational expert rebutted the presumption that the claimant could not perform the occupations classified as light by the DOT.

## CONCLUSION

We affirm the district court's decision summarily affirming the ALJ's finding that the claimant was not disabled.

**AFFIRMED.**

---

9. The ALJ apparently contradicted herself by including in the hypothetical as fact that claimant was mentally limited to jobs that required no public interaction due to pain and medication even though the ALJ ultimately discounted claimant's relevant pain testimony as not credible. However, this overinclusion of debilitating factors is harmless simply because if a person can do a job that requires increased concentration, the claimant is also capable of performing work

that requires less concentration. This, of course, would not be true where the government is required to produce evidence of work above a minimum skill level. *See, e.g., Terry v. Sullivan*, 903 F.2d 1273 (9th Cir.1990). However, here no such issue was raised nor requirement found relevant.