**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| LORELL LAIR-DEL RIO, | No. 08-55589 |
| Plaintiff - Appellant, | D.C. No. 8:07-cv-00551-VBK |
| v. | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | MEMORANDUM[*] |
| Defendant - Appellee. | |

Appeal from the United States District Court
for the Central District of California
Victor B. Kenton, Magistrate Judge, Presiding

Argued and Submitted October 8, 2009
Pasadena, California

Before: KLEINFELD and TALLMAN, Circuit Judges, and LAWSON,[**] District Judge.

Lorell Lair-Del Rio appeals the denial of her claim for social security

disability and supplemental income benefits claiming (1) substantial evidence does

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]    The Honorable David M. Lawson, United States District Judge for the Eastern District of Michigan, sitting by designation.

not support the Administrative Law Judge's ("ALJ") decision that she was not disabled due to anxiety or depression as of her date last insured, and (2) the ALJ erred when he did not call a vocational expert. We conclude that substantial evidence supports the ALJ's decision that Lair-Del Rio did not meet her burden to prove that she was disabled as of the date last insured, June 30, 1999. Furthermore, the ALJ was not required to call a medical expert because he determined Lair-Del Rio was not disabled. Accordingly, we affirm.

We review de novo the district court's decision affirming the Commissioner's denial of benefits. *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995). The decision of the Commissioner must be affirmed if it is supported by substantial evidence and the Commissioner applied the correct legal standards. *Id.* In social security proceedings, the burden of proof is on the claimant at steps one through four, but on the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

Lair-Del Rio first claims that the record lacks substantial evidence supporting the ALJ's decision that she did not meet her burden to establish that she was disabled as of the date last insured. On the contrary, the record is devoid of any medical records from the relevant period—between her claimed onset date of April 1, 1998, and her date last insured of June 30, 1999—that would meet her

burden to establish a disability. Lair-Del Rio argues that despite the fact that she could not provide any medical records from the relevant period, she nevertheless met her burden with letters provided by three doctors: Dr. Jennifer Kendall, Dr. Laurence Gorlick, and Dr. Jeanne Haislett. These retrospective letters, written months and years after the relevant time period, are unpersuasive.

Dr. Kendall is the only doctor who purports to have "treated" Lair-Del Rio during the relevant time period. Dr. Kendall wrote two letters on behalf of Lair-Del Rio dated May 18, 2000, and May 25, 2000. In her May 18, 2000, letter, Dr. Kendall indicated she was actually treating Lair-Del Rio's son Noah as "his individual therapist and family therapist." She also indicated she "worked with Mrs. Lair Del Rio [sic] individually on parenting issues and techniques" from June 1999 to December 1999. She did not, however, provide any type of diagnosis in this letter, nor did she attach any medical records. In her May 25, 2000, letter, Dr. Kendall wrote that "[i]n [her] opinion, [Lair-Del Rio] appeared to be manic, exhibiting symptoms such as a decreased need for sleep, depressed appetite, anxiety, paranoia, rapid speech and convoluted thought processes." Dr. Kendall did not include any medical records with her second letter. Given the lack of any medical records to support Dr. Kendall's opinion made six months after the "treatment" of Lair-Del Rio's son ended, substantial evidence supports the ALJ's

3

conclusion that the letter "is not a diagnosis," that Dr. Kendall's "treating relationship was with the child and not the parent," and that she "did not see the claimant as a therapist, but more it seems as a social worker."

Dr. Gorlick's letters dated November 8, 2001, and February 22, 2006, suggest the "presence of problems from 2001 on," but they do not cover the relevant period from April 1, 1998, to June 30, 1999. In his 2006 letter, Dr. Gorlick indicated that "[o]ver the past six to seven years" Lair-Del Rio had "numerous conditions, including anxiety, depression, panic attacks and post-traumatic stress disorder." Dr. Gorlick did not provide any medical records or history from the relevant period to supplement his opinion in either letter. Therefore, substantial evidence supports the ALJ's rejection of Dr. Gorlick's letters as "not useful" because they "give no indications of severity or even history."

In her letter dated March 22, 2003, Dr. Haislett recounted that when she treated Lair-Del Rio from September 1995, to February 1996, she exhibited "depression as evident by a depressed mood with crying episodes." However, Dr. Haislett did not provide any records contemporaneous with her treatment of Lair-Del Rio. Furthermore, her opinion does not cover the relevant time period from 1998 to 1999.

It is Lair-Del Rio's burden to "furnish medical and other evidence that [the Commissioner] can use to reach conclusions about [her] medical impairment(s)." 20 C.F.R. § 404.1512(a). Here, the ALJ found that Lair-Del Rio did not provide any reliable medical records from the relevant time period. The record supports that finding. In addition, the ALJ expressly found Lair-Del Rio's testimony not entirely credible. The ALJ's credibility determination is a "reasonable interpretation and is supported by substantial evidence; thus, it is not our role to second-guess it." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ also concluded that Lair-Del Rio's medical records pertaining to treatment obtained subsequent to the date last insured did not satisfy her burden to prove an onset date that preceded the date last insured. This was a reasonable conclusion and because a reasonable mind could conclude on the basis of the record that Lair-Del Rio was not disabled as of the date last insured, we hold substantial evidence supports the ALJ's findings. *See Crane v. Shalala*, 76 F.3d 251, 254 (9th Cir. 1996) (citing *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995)).

Finally, an ALJ must call a medical expert where the onset date of the disability is unclear. *See Armstrong v. Comm'r*, 160 F.3d 587, 590 (9th Cir. 1998). However, that requirement under Social Security Ruling 83-20 only applies where a claimant has been found disabled. *Id.* While there was medical evidence

presented in *Armstrong* proving the existence of a disability, it was unclear the date on which the various proven impairments culminated into the disability. *See id.* at 590–91. Unlike *Armstrong*, we have no contemporaneous records here and no evidence of treatment by the opining health care professionals during the relevant time period. Because the burden of proof remains with the claimant "to prove disability before expiration of disability insured status," *id.* at 590, Lair-Del Rio has failed to meet her burden and *Armstrong* is thus inapposite.

**AFFIRMED.**

Lair-Del Rio v. Astrue, 08-55589

Kleinfeld, Circuit Judge, dissenting:

I respectfully dissent. The majority distinguishes Armstrong v. Commissioner of Social Security[1] on the basis that the ALJ did not need to follow it because in this case, unlike in Armstrong, the ALJ determined that Lair-Del Rio was never disabled at any time. That would be a valid basis to distinguish Armstrong if the ALJ's finding were supported by the record. But it is not. The record establishes that Lair-Del Rio became disabled at some point between 1998 and today.

Lair-Del Rio was previously a successful securities broker and financial planner who had her own radio show and otherwise appears to have functioned at a high level. She was adjudicated to be disabled in her SSI hearing in 2001. And in 2006 she was diagnosed with bipolar disorder by a psychiatrist, Dr. Inglis. Dr. Inglis prescribed standard bipolar disorder medication, and noted improvement in response to the treatment (which tends to confirm the diagnosis). The record

---

[1] 160 F.3d 587 (9th Cir. 1998).

1

shows a clear pattern of disintegrating mental health starting in the late 1990s but

going undiagnosed until 2006, when she finally began receiving treatment for

bipolar disorder. At some point, Lair-Del Rio became disabled. The question the

ALJ had to decide was when. The case should turn on whether Lair-Del Rio's

disability began before her last date insured, June 30, 1999.

Social Security Ruling 83-20 instructs the ALJ how to determine the exact

date of disability in a situation where the claimant became disabled at some point

but it is unclear if the onset date was before the date last insured. Lair-Del Rio's is

the type of claim that Ruling 83-20 contemplates in the following passage:

> In some cases, it may be possible, based on the medical evidence to
> reasonably infer that the onset of a disabling impairment(s) occurred
> some time prior to the date of the first recorded medical examination,
> e.g., the date claimant stopped working. How long the disease may be
> determined to have existed at a disabling level of severity depends on
> an informed judgment of the facts in a particular case. This judgment,
> however, must have a legitimate medical basis. At the hearing, the
> [ALJ] should call on the services of a medical advisor when onset
> must be inferred.[2]

We held in Armstrong that when there is substantial evidence of disability but the

onset date is unclear, Ruling 83-20 requires the ALJ to consult an independent

medical advisor to evaluate the evidence and determine whether the onset of

---

[2] Social Security Ruling 83-20, 1983 WL 31249, *3.

disability occurred before the date last insured.[3]

This case is strikingly similar to Armstrong. Both involve high-functioning individuals who stopped functioning and were later diagnosed with serious mental illness. Armstrong ceased any meaningful employment in 1988 and was diagnosed in 1994.[4] He made money by recycling aluminum cans.[5] Lair-Del Rio ceased her meaningful employment in 1998 and was diagnosed in 2006. She made money by having her son find department store receipts in the trash and pretend to return unpurchased items using the receipts. Dr. Kendall made this observation in a letter dated May 25, 2000 in reference to her work with Lair-Del Rio from June to December of 1999, which partially overlaps with her period of insurance coverage.

In Armstrong, we stated that, "[a]lthough not diagnosed until 1994, Armstrong's depression could have been disabling long before that time."[6] That is equally true in this case, where the diagnosis of bipolar disorder came eight years

_____

[3] 160 F.3d at 590.

[4] Id. at 588.

[5] Id.

[6] Id. at 590.

3

after Lair-Del Rio stopped working, as opposed to six years in <u>Armstrong</u>.  The

ALJ in <u>Armstrong</u> determined that Armstrong had not demonstrated that his

depression was disabling as of that earlier date.[7]  We reversed and held that Ruling

83-20 requires the ALJ to consult with a medical expert to determine if the onset of

the disability was earlier than the date of diagnosis.[8]  We should do the same in this

case.


There are two other differences between this case and <u>Armstrong</u>.  First, the

ALJ in <u>Armstrong</u> assessed disability benefits and SSI in the same proceeding.

Lair-Del Rio had already been held disabled for SSI in 2001 when she sought past

disability benefits.  Second, Armstrong had some physical impairments as well as

mental impairments.  However, the opinion focuses on Armstrong's mental

disability and mentions the physical impairments in passing.[9]  Neither of these

differences suggest the cases should be decided differently.


The ALJ tried to support the finding that Lair-Del Rio was never disabled by

---

[7] <u>Id.</u>

[8] <u>Id.</u>

[9] <u>See</u> <u>id.</u>

4

finding that she "was capable of unskilled work involving simple repetitive tasks." That is contradicted by the medical records. Both Dr. Gorlick and Dr. Rockman reference Lair-Del Rio's inability to concentrate and to handle the stress of working. These opinions focus on Lair-Del Rio's inability to function in any work environment, not on her inability to perform certain types of work.

It was error for the ALJ to fail to consult an independent medical expert to evaluate the full record in this case. Doing so would have enabled the ALJ to determine whether to relate the later diagnoses back to the earlier claimed onset date as provided by Smith v. Bowen.[10] A medical expert could review the record and advise the ALJ on whether the record supports the conclusion that Lair-Del Rio's bipolar disorder caused her to be disabled prior to June 30, 1999, or whether her condition only became disabling at a later date.

---

[10] 849 F.2d 1222, 1225-26 (9th Cir. 1988).