**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| MICHELLE R HURTER, | No. 10-35997 |
| Plaintiff - Appellant, | D.C. No. 3:09-cv-05617-RBL |
| v. | |
| MICHAEL J. ASTRUE, | MEMORANDUM[*] |
| Defendant - Appellee. | |

Appeal from the United States District Court
for the Western District of Washington
Ronald B. Leighton, District Judge, Presiding

Argued and Submitted October 14, 2011
Seattle, Washington

Before: BEEZER and PAEZ, Circuit Judges, and COLLINS, District Judge.[**]

Michelle Hurter challenges the denial of disability benefits by the

Commissioner of the Social Security Administration. Because we hold that

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

[**] The Honorable Raner C. Collins, District Judge for the U.S. District Court for Arizona, sitting by designation.

substantial evidence supports the decision of the administrative law judge (ALJ), we affirm the judgment of the district court.

We have jurisdiction over this matter pursuant to 28 U.S.C. § 1291. The facts of this case are known to the parties. We need not repeat them here.

## I

We review de novo an order by the district court upholding a decision by the Social Security Commissioner that denies benefits to an applicant. *Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). We affirm a decision by the Commissioner if it is "supported by substantial evidence, and if the Commissioner applied the correct legal standards." *Id.* If the "evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

## II

Hurter first argues that the ALJ erred by failing to classify some of her alleged impairments as severe. Hurter is incorrect.

The ALJ provided ample support in determining which of Hurter's impairments were non-severe. For example, there was no evidence of appellant's depression or anxiety other than her subjective complaints. Further, the evidence showed that medication was treating her migraines and high blood pressure.

Hurter also argues that the ALJ failed even to identify certain impairments. She contends that the medical record supports her argument, but most of the reports she cites are inconclusive. The two most salient pieces of evidence supporting her case are Dr. Seiwert's evaluations and Hurter's own testimony at the benefits hearing. But, as we discuss in Part III below, the ALJ properly discredited both. Hurter had the burden of proving that her impairments affected her ability to perform basic work activities, *Edlund v. Massanari*, 253 F.3d 1152, 1159–60 (9th Cir. 2001), and substantial evidence supports the ALJ's conclusion that she did not meet that burden.

### III

Hurter next contends that the ALJ made a variety of mistakes in assessing her residual functional capacity (RFC). She argues that the ALJ erred by discrediting her hearing testimony, evaluating the medical evidence as he did, and failing to consider all of her impairments. We address each in turn.

The ALJ did not err in discounting Hurter's testimony. Credibility determinations are the province of the ALJ, *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999), but "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and

convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996).

The ALJ provided numerous specific, clear and convincing reasons to find that Hurter had exaggerated the gravity of her symptoms. First, the objective evidence contradicts Hurter's testimony regarding the severity of her symptoms. For example, the ALJ referenced a doctor's report that stated she had a normal tandem gait. Hurter is correct that there is some conflicting evidence; a physical therapist concluded that Hurter does suffer from some gait issues. We do not, however, "reverse credibility determinations of an ALJ based on contradictory or ambiguous evidence." *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995).

The ALJ noted Hurter's conservative treatment as another reason to discredit her testimony. "[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (quoting *Johnson*, 60 F.3d at 1434). The ALJ referenced the prescription of home exercise to treat her back problems, the fact that she was not a candidate for surgery and the successful use of medication to treat her migraines.

Hurter's failure to follow prescribed treatment without adequate explanation is also relevant to a credibility analysis. *See Tommasetti v. Astrue*, 533 F.3d 1035,

1039 (9th Cir. 2008). Hurter continues to smoke despite warnings from her doctors regarding its impact on her lung condition and has "decreased adherence" to her prescribed exercises due to forgetfulness.

Hurter argues correctly that the ALJ should not have cited her daily activities as a reason to discredit her testimony. They neither contradict her other testimony nor bear a meaningful relationship to workplace activities. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). Even excluding this rationale, however, there remains substantial evidence supporting the ALJ's decision to discount Hurter's testimony. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

We turn next to the ALJ's analysis of Dr. Seiwert's reports. We hold that there is substantial evidence for rejecting her evaluations. But because of the deference our circuit accords the opinions of treating physicians, *see Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995), and the fact that Dr. Seiwert and Hurter have a 15-year treatment relationship, we will explain our reasoning thoroughly.

We note initially that the ALJ needed only to provide "specific and legitimate" reasons supported by substantial evidence for rejecting Dr. Seiwert's opinion. *Id.* (holding that an ALJ must have specific and legitimate reasons for rejecting a treating physician's opinion when it is contradicted by another doctor).

"The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [his] interpretation thereof, and making findings." *Tommasetti*, 533 F.3d at 1041 (citation and internal quotation marks omitted). Dr. Rao concluded that Hurter could stand or walk comfortably for six hours a day and lift up to 25 pounds frequently, directly contravening Dr. Seiwert's assessment. The specific and legitimate standard is less searching than the clear and convincing rationale required for rejecting the uncontradicted opinion of a treating physician, *see Lester*, 81 F.3d at 830–31, and the ALJ properly explained why he relied on Dr. Rao's evaluation instead of Dr. Seiwert's.

The ALJ met his burden by providing specific and legitimate reasons for rejecting Dr. Seiwert's opinions. First, the ALJ noted that the doctor's reports were largely informed by Hurter's own subjective complaints. We have held that "[a]n ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible." *Tommasetti*, 533 F.3d at 1041 (quoting *Morgan*, 169 F.3d at 602). The record supports the ALJ's conclusion. Much of the first evaluation recounts what Dr. Seiwert herself labels Hurter's "Subjective Medical History" or "Subjective and Medical History." The information that follows fits this description. For example, in the paragraph labeled "depression" Dr. Seiwert writes that Hurter "suffered

abuse as a child, which caused depression and subsequent drug abuse." There is no other such evidence in the record. The paragraph on migraines is comprised almost entirely of descriptions of pain and frequency of symptoms. The hearing loss section notes that Hurter received a recommendation for hearing aids. In fact, Dr. Becker only wrote that Hurter was "borderline" for hearing aids.

The ALJ also reasoned that the medical record as a whole did not support Dr. Seiwert's conclusions. The contrary opinions of other doctors constitute a specific and legitimate reason to discount a treating physician's opinion. *See Tonapetyan*, 242 F.3d at 1149. Drs. Rao and Merrill both concluded that Hurter could sit or stand for six hours out of an eight-hour workday, contrary to Dr. Seiwert's assessment. Those doctors also opined that Hurter had the ability to lift weights greatly in excess of Dr. Seiwert's estimate.

Another reason proffered by the ALJ is that the other records referenced in Dr. Seiwert's treatment notes do not support her conclusions. *Cf. Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (discrepancies between a doctor's own notes and conclusions constitute a clear and convincing reason to reject that doctor's opinion). The diagnoses in Dr. Brack's report are far more subdued than Dr. Seiwert's. For example, Dr. Brack acknowledged back problems, but opined that Hurter was not a candidate for surgery and instead proposed a walking

program.  He also noted an ability to forward flex with her fingers to her toes and suggested only that Hurter "take precautions bending and lifting."  These discrepancies in the treatment notes are a specific and legitimate reason to reject Dr. Seiwert's opinion.

The ALJ chose to credit greatly the opinions of Drs. Rao and Merrill.  As the district court noted, Hurter cannot provide a compelling reason why this decision was error.  Likewise she complains that the ALJ failed to discuss certain medical reports, but the opinions she cites are not significant probative evidence.  *See Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1984) (holding that ALJ need only discuss significant probative evidence).  "Where as here, medical reports are inconclusive, questions of credibility and resolution of conflicts in the testimony are functions solely of the [Commissioner]."  *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) (internal quotation marks omitted).

Hurter next argues that the ALJ failed to consider all of her severe and non-severe impairments when assessing her RFC.  This contention gives us pause because it does appear that the ALJ may have failed to consider the totality of her impairments at this stage of his analysis.  We hold, however, that any failure was harmless error.

Social Security Ruling 96-8p is clear that the ALJ must consider all of a claimant's impairments during the RFC assessment, not just those classified as "severe." "While a 'not severe' impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of a claim." SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996). In his RFC analysis the ALJ failed to consider explicitly Hurter's alleged impairments of depression, anxiety, a hernia and an ankle injury.

The ALJ's omission of these impairments does not require reversal of the RFC assessment because any error was harmless. First, although the ALJ did not explicitly consider the above impairments, he stated that he had considered all symptoms in formulating the RFC. In addition, these four alleged impairments were devoid of almost any merit. As discussed *supra*, the only support for Hurter's allegations of depression and anxiety were her own subjective complaints in Dr. Seiwert's evaluation. Hurter had apparently successful surgery to remove the hernia and a radiograph of her ankle fracture showed "at most only a few millimeters of displacement." The ALJ discussed these very reasons at step two while classifying Hurter's depression, anxiety, hernia and ankle injury as non-severe. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054–55 (9th Cir.

2006) (noting that ALJ commits harmless error when the mistake was "nonprejudicial" or "irrelevant" to the ultimate disability conclusion). Given the meager medical support for these impairments, we hold that the ALJ's failure to consider how these impairments might complicate Hurter's other symptoms was harmless error.

IV

Hurter next challenges the ALJ's decision to apply Medical-Vocational Rule 202.20, which directs a finding of "not disabled." Appellant identifies three issues at step five: the failure to consult a vocational expert, the determination that she is capable of light instead of sedentary work and her classification as a "younger individual."

For the reasons stated by the district court, Hurter is correct that the ALJ should have consulted a vocational expert on the issue of her ability to perform other work existing in significant numbers in the national economy. Where a claimant has exertional and non-exertional impairments, the ALJ cannot rely on the grids alone to find the claimant not disabled. *Lounsbury v. Barnhart*, 468 F.3d 1111, 1115–16 (9th Cir. 2006). The district court was correct in remanding the case to the ALJ on this issue.

Hurter is wrong, however, that the ALJ erred in determining that she was capable of light work. Because her arguments merely reiterate her challenge to her RFC finding, our determination that the ALJ did not err applies here as well. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175–76 (9th Cir. 2008).

The ALJ did err in determining Hurter's age. Instead of using her age on the date she filed her application, the ALJ should have used her age on the date of his decision. *See Russell v. Bowen*, 856 F.2d 81, 84 (9th Cir. 1988). On remand, the ALJ should calculate Hurter's age on the date of the new decision. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1229 n.9 (9th Cir. 2009). After he obtains a vocational expert's testimony as to what kind of work someone with Hurter's limitations can do, the ALJ should consider this updated age to decide whether she can find work in the national economy. *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009).

V

Because substantial evidence supports the ALJ's analysis at step two and at the RFC stage, we affirm. We thus reject Hurter's request to remand for an award of benefits. *See Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004). This case is remanded to the ALJ as ordered by the district court for proceedings consistent with the district court's judgment and this memorandum disposition.

**AFFIRMED and REMANDED.**