**Wilma J. SIMMONS, SS # 515–50–9556, Plaintiff,**

v.

**Shirley S. CHATER, Commissioner of Social Security Administration, Defendant.**

**No. 95–C–1242–J.**

United States District Court, N.D. Oklahoma.

Jan. 6, 1997.

---

Paul F. McTighe, Jr., Tulsa, OK, for plaintiff.

WynDee Ann Baker, U.S. Atty., Tulsa, OK, for defendant.

### ORDER [1]

JOYNER, United States Magistrate Judge.

Plaintiff, Wilma J. Simmons, pursuant to 42 U.S.C. § 405(g), requests judicial review of the decision of the Commissioner denying Social Security benefits.[2] Plaintiff asserts that the Commissioner erred because (1) the record does not contain substantial evidence that Plaintiff can perform a significant number of jobs in the economy, and (2) Plaintiff was denied her due process right to counsel. For the reasons discussed below, the Court **affirms** the Commissioner's decision.

### I. PLAINTIFF'S BACKGROUND

Plaintiff was born on September 5, 1950. [R. at 30]. Plaintiff is a high school graduate and completed one year of college courses. [R. at 31]. Plaintiff has previously worked cleaning houses and stuffing envelopes. [R. at 35].

1. This Order is entered in accordance with 28 U.S.C. § 636(c) and pursuant to the parties' Consent to Proceed Before United States Magistrate Judge.

2. Plaintiff filed an application for disability and supplemental security insurance benefits by application dated March 23, 1994. [R. at 68]. The application was denied initially and upon reconsideration. A hearing before Administrative Law Judge Dana E. McDonald (hereafter, "ALJ") was held October 27, 1994. [R. at 25]. By order dated January 24, 1995, the ALJ determined that Plaintiff was not disabled. [R. at 12]. Plaintiff appealed the ALJ's decision to the Appeals Council. On November 20, 1995, the Appeals Council denied Plaintiff's request for review. [R. at 3].

Plaintiff weighs approximately 300 pounds and is five foot eight inches tall. [R. at 33, 144]. Plaintiff testified that she has glaucoma and experiences blurry vision. [R. at 38]. According to Plaintiff, she reads for no longer than ten or fifteen minutes. [R. at 39]. In addition, Plaintiff stated she has a hiatal hernia, arthritis, high blood pressure, and experiences pain. [R. at 39–44].

Plaintiff testified that she has worked, on occasion, as a housekeeper. The last time that Plaintiff worked as a housekeeper was the month before the hearing. According to Plaintiff, she worked for approximately one day every two weeks, and had been working for the previous three to four months. [R. at 37].

Plaintiff acknowledged that she can carry a gallon of milk for approximately ten minutes. [R. at 48]. During a typical day, Plaintiff stated that she walks for approximately thirty minutes to an hour. [R. at 49]. Plaintiff testified that she experiences a lot of pain, and that her back hurts. In her disability report dated March 23, 1994, Plaintiff noted that she cooks for herself, attends church, and sometimes drives. [R. at 94].

A Residual Functional Capacity Assessment Form ("RFC") completed by Vallis D. Anthony, M.D., on June 7, 1994, indicates that Plaintiff can occasionally lift fifty pounds, frequently lift 25 pounds, stand/walk for six hours, sit for six hours, and push or pull an unlimited amount. [R. at 74]. The RFC notes that Plaintiff complained of back pain but was able to flex to sixty degrees. In addition, Plaintiff's gait was reported as stable, her X-rays were normal, and her visual limitations were noted as "none established." [R. at 74]. This RFC was "affirmed as written" on June 23, 1994, by Thurma Feigel, M.D.

Plaintiff was examined by Dan E. Calhoun, M.D., on May 4, 1994. He noted that Plaintiff wears glasses. Plaintiff's vision in her right eye is recorded at 20/70. Her vision in her left eye was 20/30, and her vision with

both eyes were 20/30. [R. at 110]. Plaintiff's gait was noted as slow but stable. Plaintiff's grip strength was also noted as good. Dr. Calhoun concluded that Plaintiff was obese, had a history of low back pain, hypertension, and GE reflux.

X-rays of Plaintiff's lumbar spine, dated June 2, 1994, were reported as normal. [R. at 117]. X-rays dated December 6, 1994, were interpreted as indicating a normal spine, normal hips, and normal knees, with no evidence of arthritis. [R. at 145].

Plaintiff was diagnosed by Carl M. Fisher, D.O., with narrow angle glaucoma on September 30, 1992. The record submitted from Plaintiff's eye doctor indicates no specific restrictions or limitations placed upon Plaintiff due to her glaucoma.

Plaintiff was examined by Varsha Sikka, M.D., on December 6, 1994. [R. at 149]. Dr. Sikka noted that Plaintiff's visual acuity without glasses was 20/200, and with glasses was 20/75. [R. at 150]. Plaintiff's range of motion of her cervical spine was reported as normal. [R. at 150]. Plaintiff's range of motion of her lumbosacral spine was reported as within normal limits except that flexion was 85 degrees. [R. at 151]. Dr. Sikka noted that there was no evidence of any arthritis or arthritic changes. [R. at 151]. Plaintiff's gait and heel/toe walk were reported as within normal limits. [R. at 151]. Dr. Sikka concluded that Plaintiff had a history of hypertension, had "chronic pain syndrome," osteoarthritis (per her family physician), and would benefit from physical therapy and conditioning. [R. at 151]. Plaintiff's ability to lift and carry was listed as fifteen pounds. [R. at 154]. Dr. Sikka concluded that Plaintiff's ability to stand, walk, or sit was not impaired. [R. at 154–55].

## II. SOCIAL SECURITY LAW & STANDARD OF REVIEW

The Commissioner has established a five-step process for the evaluation of social security claims.[3] See 20 C.F.R. § 404.1520. Dis-

---

**3.** Step one requires the claimant to establish that he is not engaged in substantial gainful activity (as defined at 20 C.F.R. §§ 404.1510 and 404.1572). Step two requires that the claimant demonstrate that he has a medically severe im-

pairment or combination of impairments that significantly limit his ability to do basic work activities. See 20 C.F.R. § 1521. If claimant is engaged in substantial gainful activity (step one) or if claimant's impairment is not medically se-

ability under the Social Security Act is defined as the

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment....

42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act only if his

physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national economy....

42 U.S.C. § 423(d)(2)(A).

The Commissioner's disability determinations are reviewed to determine (1) if the correct legal principles have been followed, and (2) if the decision is supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir.1988); *Williams*, 844 F.2d at 750.

The Court, in determining whether the decision of the Commissioner is supported by substantial evidence, does not examine the issues *de novo*. *Sisco v. United States Dept. of Health and Human Services*, 10 F.3d 739, 741 (10th Cir.1993). The Court will not reweigh the evidence or substitute its judgment for that of the Commissioner. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir.1994). The Court will, however, meticulously examine the entire record to determine if the Commissioner's determination is rational. *Williams*, 844 F.2d at 750; *Holloway v. Heckler*, 607 F.Supp. 71, 72 (D.Kan.1985).

"The finding of the Secretary[4] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence is that amount and type of evidence that a reasonable mind will accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Williams*, 844 F.2d at 750. In terms of traditional burdens of proof, substantial evidence is more than a scintilla, but less than a preponderance. *Perales*, 402 U.S. at 401, 91 S.Ct. at 1427. Evidence is not substantial if it is overwhelmed by other evidence in the record. *Williams*, 844 F.2d at 750.

This Court must also determine whether the Commissioner applied the correct legal standards. *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir.1994). The Commissioner's decision will be reversed when she uses the wrong legal standard or fails to clearly demonstrate reliance on the correct legal standards. *Glass*, 43 F.3d at 1395.

### III. THE ALJ'S DECISION

In this case, the ALJ determined that Plaintiff was not disabled at Step Five of the sequential evaluation procedure. The ALJ noted that medication and therapy have effectively alleviated some of Plaintiff's symptoms. The ALJ referenced several consultative examinations noting that Plaintiff was capable of performing the physical requirements necessary for light work. The ALJ concluded that Plaintiff's blurred vision problems would not interfere with her ability to work. The ALJ found that Plaintiff could

---

vere (step two), disability benefits are denied. At step three, claimant's impairment is compared with those impairments listed at 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listings"). If a claimant's impairment is equal or medically equivalent to an impairment in the Listings, claimant is presumed disabled. If a Listing is not met, the evaluation proceeds to step four, where the claimant must establish that his impairment or the combination of impairments prevents him from performing his past relevant work. A claimant is not disabled if the claimant can perform his past work. If a claimant is unable to perform his previous work, the Commissioner has the burden of proof (step five) to establish that the claimant, in light of his age, education, and work history, has the residual

functional capacity ("RFC") to perform an alternative work activity in the national economy. If a claimant has the RFC to perform an alternate work activity, disability benefits are denied. *See Bowen v. Yuckert*, 482 U.S. 137, 140–42, 107 S.Ct. 2287, 2290–92, 96 L.Ed.2d 119 (1987); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir.1988).

4. Effective March 31, 1995, the functions of the Secretary of Health and Human Services ("Secretary") in social security cases were transferred to the Commissioner of Social Security. P.L. No. 103–296. For the purpose of this Order, references in case law to "the Secretary" are interchangeable with "the Commissioner."

perform the jobs of escort driver, telemarketer, and dispatcher based on the testimony of a vocational expert, and concluded that Plaintiff was not disabled.

## IV. REVIEW

### Substantial Evidence of Alternative Jobs

#### Plaintiff's Limitations

Plaintiff initially asserts that she suffers from gross obesity, above Listing[5] level, which limits her to no prolonged standing or walking. The record does indicate that Plaintiff's weight, approximately 300 pounds, is at the "Listing level" for her height (5'8"). However, Plaintiff does not allege that she meets a Listing, and based on the record Plaintiff does not meet a Listing.[6] In addition, although Plaintiff asserts that she is limited to no prolonged standing or walking, the mere existence of Plaintiff's obesity does not dictate such a finding. Plaintiff's gait was reported as stable by each of her examining doctors, and Dr. Sikka indicated that Plaintiff had no standing or walking limitations. [R. at 154]. Regardless, the ALJ presented hypotheticals to the vocational expert which included sit/stand limitations and light or sedentary exertional requirements. Plaintiff additionally notes that she has nonexertional impairments which include pain and vision loss.

#### Questions to the Vocational Expert

Plaintiff seems to suggest that the ALJ erred by extensively questioning the vocational expert, and that only after such extended questioning did the vocational expert testify that several jobs were available that Plaintiff could perform. Plaintiff refers the Court to no authority. Plaintiff is correct that the nature of the proceeding before the ALJ is non-adversarial. However, as Plaintiff additionally points out in her "due process" argument, an ALJ has a duty to fully develop the record. The Court has reviewed the transcript and the testimony of the vocational expert and concludes that the ALJ did not overstep his boundaries with his questions to the vocational expert, and that Plaintiff was not unfairly treated by such questions.

#### Contradictions: DOT and Vocational Expert

Plaintiff additionally asserts that the testimony of the vocational expert differed from the Dictionary of Occupational Titles ("DOT"), and that it was therefore error for the ALJ to have relied on the testimony of the vocational expert. Plaintiff relies on Smith v. Shalala, 46 F.3d 45 (8th Cir.1995), and Johnson v. Shalala, 60 F.3d 1428 (9th Cir.1995).

In Smith, the ALJ concluded that the Plaintiff had the ability to lift only 20 pounds. The vocational expert testified that the Plaintiff could perform the jobs of hand packager and production assembler. However, the job of hand packager was listed in the DOT as "medium" work requiring the ability to lift between 20 and 50 pounds occasionally. The Eighth Circuit concluded that when expert testimony conflicts with the DOT, the DOT controls. The testimony of the vocational expert, that the Plaintiff could perform the work of a hand packager although the Plaintiff could not lift more than 20 pounds was therefore discounted. Smith, 46 F.3d at 47.

The Johnson court noted that in prior decisions it had held that the DOT's classification of a particular job as "light" precluded a finding that a person restricted to sedentary work could perform the job. However, the Johnson court held that the DOT provided only a rebuttable presumption, which could be properly rebutted by the testimony by a vocational expert. The court initially noted that the "DOT is not the sole source of admissible information concerning jobs." Johnson, 60 F.3d at 1434 (citations omitted). In addition, the DOT acknowledges that it is not comprehensive, and the social security regulations also provide for the testimony of

---

5. At step three, a claimant's impairment is compared with those impairments listed at 20 C.F.R. Pt. 404, Subpt. P, App. 1, commonly referred to as the "Listings." An individual who meets or equals a Listing is presumed disabled.

6. The Listings for obesity require that an individual meet not only the height and weight requirements, but that the individual also meet one of the other listed physical impairments. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 9.09.

vocational experts. *Id.* The court concluded that "in light of the DOT's own disclaimer and the administratively recognized validity of expert testimony by qualified individuals, the expert testimony may properly be used to show that the particular jobs, whether classified as light or sedentary, may be ones that a particular claimant can perform. In fact it seems an eminently appropriate use of the vocational expert's knowledge and experience." *Id.* at 1435. The court concluded that "because these [job] demands do not exceed the abilities the ALJ found the claimant to possess, the vocational expert rebutted the presumption that the claimant could not perform the occupations classified as light by the DOT." *Id.* at 1436. *See also Conn v. Secretary of Health & Human Services*, 51 F.3d 607, 610 (6th Cir.1995) ("[W]hile the ALJ may take judicial notice of the classification in the Dictionary, the ALJ may accept testimony of a vocational expert that is different from information in the Dictionary of Occupational Titles.... The social security regulations do not require the Secretary or the expert to rely on classifications in the Dictionary of Occupational Titles.") (citations omitted).

For Plaintiff to be successful in her argument, the Court must conclude: (1) a direct contradiction exists between the DOT and the expert testimony, and (2) the DOT is binding and takes precedence over the testimony of the expert.

In both *Johnson* and *Smith* the contradiction between the expert testimony and the DOT involved the classification of the physical requirements for performing a job, and was a "clear" contradiction. This is not true in this case. Plaintiff notes that in this case the vocational expert testified that Plaintiff could perform three jobs: escort driver, dispatcher, and telemarketer.[7] Plaintiff further notes that the ALJ found that Plaintiff had no transferable skills. According to Plaintiff the jobs of telephone solicitor and dispatcher

have a DOT "SVP of 3" which is therefore "semi-skilled" work and which therefore requires that an individual possess transferable work skills. However, although appealing at first blush, Plaintiff's argument that the SVP rating is an express contradiction of the vocational expert's testimony is not at all clear.

In the DOT, SVP stands for "specific vocational preparation." Each job contains a number which equates to the amount of vocational preparation time that is necessary for the performance of the job. The DOT additionally notes that the vocational preparation can include special vocational training, *on the job training*, vocational education, apprenticeship, in-plant training, or experience in other jobs. *See* Dictionary of Occupational Titles, at 1009 (4th ed. 1991).

The DOT also provides an SVP scale. An SVP of "three" indicates that a job requires more than one month and up to three months of training. In addition, this time "does not include the orientation time required of a fully qualified worker to become accustomed to the special conditions of any new job." *See* Dictionary of Occupational Titles, at 1009 (4th ed. 1991).

The social security regulations provide that the administration takes "administrative notice" of "reliable job information available from various governmental and other publications ... [including] the Dictionary of Occupational Titles." 20 C.F.R. § 404.1566(d). However, as becomes evident from a comparison of the DOT and the social security regulations, the two are not an exact match.[8] The regulations define "unskilled work" as "work which needs little or no judgment to do simple duties that can be learned *on the job* in a short period of time. The job may or may not require considerable strength ... and a person can *usually* learn to do the job in 30 days, and little specific vocational preparation and judgment are needed." 20 C.F.R. 404.1569(a) (emphasis added). No

---

**7.** Each of these jobs is listed as a "sedentary" job. The hypothetical to the vocational expert included limitations based on blurry vision, physical requirements, and a sit/stand option.

**8.** The DOT also notes that "[o]ccupational definitions in the DOT are written to reflect the most

typical characteristics of a job as it occurs in the American economy. Task element statements in the definitions may not always coincide with the way work is performed in particular establishments or localities." *See* Dictionary of Occupational Titles, at 1009 (4th ed. 1991).

specific "time guidelines" are provided for semi-skilled work or skilled work.

The definition in the regulations for un-skilled work, which can include on the job training usually learned within 30 days is not in direct and obvious conflict with an SVP rating of three, which can include on the job training of one month to three months. The Court is, therefore, not convinced that a direct conflict between the regulations and the DOT exists. *But see Terry v. Sullivan,* 903 F.2d 1273, 1277 (9th Cir.1990).

■ In addition, the transcript indicates that the ALJ clearly informed the vocational expert that Plaintiff had no transferable job skills, and that the vocational expert concluded that Plaintiff had no transferable skills and no prior work experience. [R. at 52, 56]. The Court is required to uphold a finding of the Commission if it is based on substantial evidence. In addition, the Court is not in a position to second-guess the evidence from the vocational expert that an individual with no transferable work skills could perform the jobs of dispatcher and telephone solicitor. The Court finds that the testimony of the vocational expert constitutes substantial evidence to support the Commissioner's decision.

■ Plaintiff's argument further depends upon the Court concluding that if a direct contradiction exists, the DOT controls. Although a few Circuits have decided this issue, the Tenth Circuit has not yet specifically addressed it.[9] As noted above, the Eighth Circuit has determined that in an express contradiction, the DOT controls;[10] the Ninth Circuit permits the DOT to act as a rebuttable presumption which can be rebutted by the testimony of a vocational expert;[11] the Sixth Circuit concluded that the DOT was not controlling and an ALJ may rely on the testimony of a vocational expert.[12] The Court is persuaded by the conclusion reached by the Sixth Circuit.

The regulations provide only that the administration will take administrative notice of various "reliable job information" sources, which can include the DOT.[13] The regulations also provide that a vocational expert can be consulted. 20 C.F.R. § 404.1566(e). In addition, the DOT notes that differences in jobs between localities do exist. And, the vocational expert in this case was presented with the facts that the Plaintiff had no transferable skills and no previous work experience. Consequently, the jobs which the vocational expert testified that Plaintiff can perform were tailored to these qualifications. Furthermore, the cases relied upon by Plaintiff addressed contradictions between the DOT and the expert testimony with respect to the physical exertional classification of the job (i.e. sedentary, light, or medium). The regulations and the DOT "match" more directly with respect to these classifications than with respect to comparisons between SVP ratings in the DOT and "transferable skills" as defined in the regulations. The "conflict" between the DOT and an expert's

---

9. Plaintiff asserts, and the Court agrees, that this issue has not been specifically addressed in a published Tenth Circuit opinion. Two unpublished decisions in the Tenth Circuit have recognized this issue, but have not addressed it on the merits. *See Queen v. Chater,* 1995 WL 747683 (10th Cir. Dec. 18, 1995); *Turner v. Chater,* 1996 WL 718125 (10th Cir. Dec. 13, 1996). One unpublished decision concluded that the DOT "controls." *Sanders v. Chater,* 1995 WL 749686 (10th Cir. Dec. 19, 1995). This decision is based in part on *Campbell v. Bowen,* 822 F.2d 1518 (10th Cir.1987). In that case, the Tenth Circuit noted that the jobs which the vocational expert had identified as "light work" were, under the DOT, "medium" or "heavy." The *Campbell* Court, however, did not decide the issue of whether the DOT classifications "trump" the testimony of the expert. *Id.* at 1523 n. 3.

10. *Smith v. Shalala,* 46 F.3d 45 (8th Cir.1995).

11. *Johnson v. Shalala,* 60 F.3d 1428 (9th Cir. 1995).

12. *Conn v. Sec. of Health & Human Serv.,* 51 F.3d 607 (6th Cir.1995).

13. The wording of this regulation is additionally troublesome. It provides that "[w]hen we determine that unskilled, sedentary, light, and medium jobs exist in the national economy (in significant numbers ...), we will take administrative notice of reliable job information available...." 20 C.F.R. § 404.1566(d). The regulations therefore appear to place two qualifiers on the use of such information. The Commissioner must first make a finding that significant numbers of jobs exist, and second, the information must be reliable.

testimony is therefore clearer with respect to physical exertional classifications, than with respect to SVP ratings. The Court is not convinced that a contradiction between the testimony of a vocational expert and the DOT requires the application of the DOT to the exclusion of the testimony of an expert witness.

These two jobs (dispatcher and telemarketer) provide a significant number of jobs in the national economy and therefore provide substantial evidence to support the ALJ's conclusion that Plaintiff is not disabled. *See, e.g., Trimiar v. Sullivan,* 966 F.2d 1326, 1330 (10th Cir.1992) (refusing to draw a bright line, but indicating the criteria for consideration in determining whether a significant number of jobs is present); *Lee v. Sullivan,* 988 F.2d 789, 793 (7th Cir.1993) (summarizing the various positions of the circuits: Sixth Circuit found 1,350 positions significant; Ninth Circuit found 1,266 positions significant; Tenth Circuit found 850–1,000 potential jobs significant; Eighth Circuit found 500 jobs significant; Eleventh found 174 positions significant). However, the vocational expert additionally testified that Plaintiff would be able to perform the job of "escort driver." The vocational expert's answer was based on the fact that Plaintiff is able to drive but experiences blurry vision. In addition, as noted above, the assessments in the record as to Plaintiff's "visual impairment" vary from indicating "no visual limitations," to recording her eyesight (with correction) at 20/30 and 20/75. Plaintiff asserts that the job of escort driver requires both near and far visual acuity on a frequent basis and therefore cannot be performed by Plaintiff.

As noted by Plaintiff, the escort driver does require near and far acuity to be "frequently present" which is defined as between "one-third and two-thirds of the time." Although Plaintiff claims that her limitations are greater than these requirements, the ALJ observed that Plaintiff currently drives, on occasion, and found only that Plaintiff experiences "blurred vision." This finding is supported by the record.[14] Therefore, the

Court again chooses not to second-guess the testimony of the expert witness that Plaintiff can perform such a job. Regardless, as noted above, assuming Plaintiff could not perform the job as escort driver, the two other jobs noted above (telemarketer, dispatcher) provide substantial evidence to support the ALJ's conclusion that Plaintiff is not disabled.

### Due Process

■ Plaintiff asserts that the ALJ effectively denied her right to counsel by basing his decision, in part, on post-hearing reports. Plaintiff asserts that the ALJ did send copies of the post-hearing reports to Plaintiff, but that Plaintiff was not represented by an attorney, that the letter accompanying the post-hearing reports did not inform Plaintiff that she had a right to consult an attorney, that the ALJ gave Plaintiff only ten days to respond to the post-hearing reports, and that this combination of factors deprived Plaintiff of a right to counsel. Plaintiff relies primarily on *Allison v. Heckler,* 711 F.2d 145 (10th Cir.1983).

In *Allison,* the Tenth Circuit Court of Appeals addressed the ALJ's reliance on a post-hearing report in denying benefits. The Court noted that no evidence at the hearing established that the claimant was disabled, and that after the hearing the ALJ sent the hearing record to a doctor for review. The ALJ relied on the conclusions in that doctor's report in finding that the claimant was not disabled and in denying benefits. The claimant contended that the ALJ's reliance on the post-hearing report denied her due process. The Court concluded that "[a]n ALJ's use of a post-hearing medical report constitutes a denial of due process because the applicant is not given the opportunity to cross-examine the physician or to rebut the report." *Id.* at 147. The Court reversed the case, concluding that "[s]hould the Secretary wish to reopen the hearing and properly admit Dr. Harvey's report, Allison must be provided the opportunity to subpoena and cross-exam-

---

**14.** Although Plaintiff does have narrow angled glaucoma, the record does not support any specific limitations from her glaucoma. In addition, at least one RFC indicates "no visual limita-
tions," and two other RFC's indicate that Plaintiff's eyesight was 20/30 and 20/75. The Court cannot conclude that the ALJ's findings are not supported by substantial evidence.

ine Dr. Harvey, and to offer evidence in rebuttal." *Id.*

In this case, the ALJ ordered a consultative examination after Plaintiff's hearing. Plaintiff was examined by Varsha Sikka, M.D., on December 6, 1994. [R. at 149]. However, the ALJ submitted this report to Plaintiff and informed Plaintiff, in a cover letter, that she had a right to submit written comments concerning the reports, that she could submit additional records, that she had a right to request a supplemental hearing, that she had a right to subpoena the doctor(s), that she could submit written questions for the doctor(s), and that she could request oral examination of the doctor(s). [R. at 158–59].

The letter does not specifically inform Plaintiff that she has a right to an attorney. However, Plaintiff was informed, at various levels of the process of her right to representation. By letter dated June 10, 1994, when Plaintiff was informed that her Social Security claim had been denied, Plaintiff was informed that she had the right to representation, including an attorney. [R. at 82–84]. In the letter informing Plaintiff of her denial at the reconsideration stage, dated June 24, 1995, Plaintiff was informed that she had a right to an attorney. [R. at 88]. Prior to her hearing before the ALJ, in the information sent to Plaintiff regarding the hearing, Plaintiff was informed that she has a right to representation, including an attorney. [R. at 23]. In the "notice" informing Plaintiff that the ALJ had rendered a decision to deny benefits, Plaintiff was again informed that she had the right to an attorney or other representation. [R. at 12–14].

Unlike *Allison,* Plaintiff was informed of the written reports, and given a chance to respond, cross-examine, or request additional information concerning the reports. In addition, Plaintiff was informed, at various times during the proceeding that she had the right to an attorney. Under these circumstances, the Court cannot find that the submission of the post-hearing report to Plaintiff, without a specific reference in the cover letter accompanying the report that Plaintiff had a right to an attorney, violated Plaintiff's due process rights. *See also Mills v. Chater,* No. 95–7071, 1995 WL 681483, at *2, n. 1 (10th Cir. November 2, 1995) ("[T]he record reveals that Mr. Mills was notified of the ALJ's intent to rely on this report, received a copy of the report, and was afforded the opportunity to respond to it with a written statement, additional evidence, and questions to be given to the author of the report. Thus the ALJ's compliance with the requirements of *Allison* renders Mr. Mills' due process argument meritless.").[15]

Accordingly, the Commissioner's decision is **AFFIRMED.**

---

**15.** This is the only issue regarding Plaintiff's right to an attorney and/or due process which Plaintiff raises. The Court additionally notes that the transcript of the hearing before the ALJ indicates that when the ALJ informed Plaintiff of her right to representation she expressed a desire to proceed *with* an attorney. However, the hearing continued without interruption, and with Plaintiff unrepresented. [R. at 25]. Generally, absent compelling circumstances, courts do not inquire into issues which are not raised before the court. *See, e.g., Crow v. Shalala,* 40 F.3d 323, 324 (10th Cir.1994). And, as noted, Plaintiff does not raise this issue. In addition, Plaintiff notes in her brief that she *choose to forego* the right to an attorney during the initial hearing. *See* Plaintiff's Brief at 9. Finally, the absence of counsel is not sufficient reason alone to justify a remand. *See, e.g., Vidal v. Harris,* 637 F.2d 710, 713 (9th Cir.1981) ("Lack of counsel does not affect the validity of the hearing and hence warrant remand, unless the claimant can demonstrate prejudice or unfairness in the administrative proceedings."). The Court is satisfied, after a review of the record, that Plaintiff's lack of counsel at the hearing did not prejudice her case.