**Dwayne L. SHEPHERD, SSN: 441–68–5062, Plaintiff,**

v.

**Kenneth S. APFEL, Commissioner of Social Security Administration,[1] Defendant.**

**No. 97–C–146–J.**

United States District Court, N.D. Oklahoma.

April 23, 1998.

---

1. On September 29, 1997, Kenneth S. Apfel was sworn in as Commissioner of Social Security. Pursuant to Fed.R.Civ.P. 25(d)(1), Kenneth S. Apfel, Commissioner of Social Security, is substituted for Shirley S. Chater as the Defendant in this action.

Paul F. McTighe, Jr., Tulsa, OK, for Plaintiff.

Peter Bernhardt, U.S. Atty., Tulsa, OK, for Defendant.

### ORDER [2]

JOYNER, United States Magistrate Judge.

Plaintiff, Dwayne L. Shepherd, pursuant to 42 U.S.C. § 405(g), appeals the decision of the Commissioner denying Social Security benefits.[3] Plaintiff asserts that the Commissioner erred because (1) Plaintiff's case involves a period of "closed disability" but the ALJ failed to appropriately follow the "medical improvement" standard, (2) the ALJ's findings as to Plaintiff's RFC are arbitrary and not supported by substantial evidence, (3) the ALJ failed to properly consider Plaintiff's pain and limited mobility, (4) the consultative examinations of Dr. Lee and Dr. Grewe establish that Plaintiff cannot perform light work, (5) the ALJ referred to no specific evidence to support his conclusions as to Plaintiff's RFC, (6) the ALJ failed to pose Plaintiff's true limitations to the vocational expert, (7) some of the testimony of the vocational expert conflicted with the Dictionary of Occupational Titles ("DOT"), and (8) the ALJ's credibility findings do not comply with *Kepler v. Chater*, 68 F.3d 387 (10th Cir.1995). For the reasons discussed below, the Court **AFFIRMS** the Commissioner's decision.

**2.** This Order is entered in accordance with 28 U.S.C. § 636(c) and pursuant to the parties' Consent to Proceed Before United States Magistrate Judge.

### I. PLAINTIFF'S BACKGROUND

Plaintiff was born May 31, 1960. [R. at 34]. Plaintiff did not finish high school, but testified that he had completed and obtained his GED. [R. at 34–35]. Plaintiff testified, at his hearing on August 23, 1995, that the last time he had seen a doctor was in June or July of 1995, but that he did not see the doctor for treatment. [R. at 43]. Plaintiff said that he experiences a lot of pain. [R. at 48].

In Plaintiff's request for reconsideration of the decision of the Social Security Administration, Plaintiff reported that he was "unable to do the work I'm trained in and wish to learn another occupation/trade." [R. at 124].

A Residual Functional Capacity Assessment ("RFC Assessment") completed by Dr. Thurma Fiegel on July 10, 1992, noted that Plaintiff could occasionally lift 20 pounds, frequently lift ten pounds, stand or walk six out of eight hours, and sit six out of eight hours. [R. at 75]. An RFC Assessment completed by Dr. Paul Woodcock on July 13, 1993 noted that Plaintiff could occasionally lift ten pounds, frequently lift five to ten pounds, stand two out of eight hours, and sit six out of eight hours. In addition, Plaintiff was reported as being to able to ambulate without aide, and having good range of motion at knees.

When Plaintiff was sixteen, he tore ligaments and cartilage in his knee which required surgery. When Plaintiff was twenty-one he was injured while working in oil field construction. He tore cartilage and ligaments in his left knee and underwent several subsequent surgeries. In November of 1983 Plaintiff had a motorcycle accident and had a compound fracture of his right tibia and fibula which was treated with a bone graft. The fragment subsequently healed, but Plaintiff had a deformity. In December 1991 Plaintiff had a motorcycle accident and suffered a compound fracture of his right tibia and fibu-

**3.** Administrative Law Judge James D. Jordan (hereafter "ALJ") concluded that Plaintiff was not disabled on September 27, 1995. Plaintiff appealed to the Appeals Counsel. The Appeals Counsel declined Plaintiff's request for review on December 13, 1996. [R. at 5].

la with the right patella split in half. Plaintiff had numerous subsequent operations including a metal plate and screws. [R. at 242].

At an examination on June 15, 1994, Plaintiff stated that he could walk only three to six blocks and stand only one to two hours before he would have to rest. [R. at 249]. Plaintiff takes ibuprofen to control his pain. [R. at 242, 309].

## II. SOCIAL SECURITY LAW & STANDARD OF REVIEW

Disability under the Social Security Act is defined as the

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . .

42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act only if his

> physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national economy. . . .

42 U.S.C. § 423(d)(2)(A). The Commissioner has established a five-step process for the evaluation of social security claims.[4] See 20 C.F.R. § 404.1520.

The Commissioner's disability determinations are reviewed to determine (1) if the correct legal principles have been followed, and (2) if the decision is supported by substantial evidence. See 42 U.S.C. § 405(g); Bernal v. Bowen, 851 F.2d 297, 299 (10th Cir.1988); Williams, 844 F.2d at 750.

The Court, in determining whether the decision of the Commissioner is supported by substantial evidence, does not examine the issues de novo. Sisco v. United States Dept. of Health and Human Services, 10 F.3d 739, 741 (10th Cir.1993). The Court will not reweigh the evidence or substitute its judgment for that of the Commissioner. Glass v. Shalala, 43 F.3d 1392, 1395 (10th Cir.1994). The Court will, however, meticulously examine the entire record to determine if the Commissioner's determination is rational. Williams, 844 F.2d at 750; Holloway v. Heckler, 607 F.Supp. 71, 72 (D.Kan. 1985).

"The finding of the Secretary[5] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence is that amount and type of evidence that a reasonable mind will accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); Williams, 844 F.2d at 750. In terms of traditional burdens of proof, substantial evidence is more than a scintilla, but less than a preponderance. Perales, 402 U.S. at 401, 91 S.Ct.

4. Step One requires the claimant to establish that he is not engaged in substantial gainful activity (as defined at 20 C.F.R. §§ 404.1510 and 404.1572). Step Two requires that the claimant demonstrate that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. See 20 C.F.R. § 404.1521. If claimant is engaged in substantial gainful activity (Step One) or if claimant's impairment is not medically severe (Step Two), disability benefits are denied. At Step Three, claimant's impairment is compared with those impairments listed at 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listings"). If a claimant's impairment is equal or medically equivalent to an impairment in the Listings, claimant is presumed disabled. If a Listing is not met, the evaluation proceeds to Step Four, where the claimant must establish that his impairment or the combination of impairments prevents him from performing his past relevant work. A claimant is not disabled if the

claimant can perform his past work. If a claimant is unable to perform his previous work, the Commissioner has the burden of proof (Step Five) to establish that the claimant, in light of his age, education, and work history, has the residual functional capacity ("RFC") to perform an alternative work activity in the national economy. If a claimant has the RFC to perform an alternate work activity, disability benefits are denied. See Bowen v. Yuckert, 482 U.S. 137, 140–42, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987); Williams v. Bowen, 844 F.2d 748, 750–51 (10th Cir.1988).

5. Effective March 31, 1995, the functions of the Secretary of Health and Human Services ("Secretary") in social security cases were transferred to the Commissioner of Social Security. P.L. No. 103–296. For the purpose of this Order, references in case law to "the Secretary" are interchangeable with "the Commissioner."

1420. Evidence is not substantial if it is overwhelmed by other evidence in the record. *Williams*, 844 F.2d at 750.

■ This Court must also determine whether the Commissioner applied the correct legal standards. *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir.1994). The Commissioner's decision will be reversed when she uses the wrong legal standard or fails to clearly demonstrate reliance on the correct legal standards. *Glass*, 43 F.3d at 1395.

### III. THE ALJ'S DECISION

In this case, the ALJ awarded to Plaintiff a "closed period of disability" on July 29, 1994, effective December 8, 1991, through December 31, 1992. The closed period of disability was based on the injuries Plaintiff received in a motorcycle accident.[6] Plaintiff additionally had a prior period of disability from November 1983 until July 1988 based on injuries in a previous motorcycle accident. [R. at 13].

The ALJ concluded that after December 31, 1992, the Plaintiff retained the RFC to perform light and sedentary work with no prolonged standing, and no prolonged use of his feet or legs. [R. at 17]. The ALJ analyzed Plaintiff's complaints of pain, but noted that for several reasons he discounted some of Plaintiff's complaints.

■ The ALJ concluded that Plaintiff could not return to his past relevant work. Based on the testimony of a vocational expert, the ALJ concluded that numerous sedentary and light jobs existed which Plaintiff could perform.

### IV. REVIEW
#### Closed Period Case

Plaintiff initially asserts that this appeal involved a "closed period of disability," and that in such a case the "medical improvement" standard applies. Plaintiff argues that the ALJ failed to properly follow the medical improvement standard.

6. The ALJ notes that based on "disability status," Plaintiff was entitled to disability through February 1993, but that Plaintiff was incarcerated in

■ In a typical social security case, benefits are granted for an indefinite period. That is, benefits continue unless they are terminated in a proceeding brought by the Secretary at some later date. After much wrangling in the federal circuit courts of appeal, it is now clear that the "medical improvement" standard, now codified at 20 C.F.R. § 404.1594, is to be applied in a proceeding to terminate benefits. *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir.1990).

A question not yet answered in a published decision by the Tenth Circuit Court of Appeals is whether the "medical improvement" standard applies in a closed period case.

In a 'closed period' case, the decision maker determines that a new applicant for disability benefits was disabled for a finite period of time which started and stopped prior to the date of his decision. Typically, both the disability and the cessation decision are rendered in the same document. *Pickett v. Bowen*, 833 F.2d 288, 289 n. 1 (11th Cir.1987). Plaintiff's argument is essentially that a closed period case consists of two distinct parts—a disability determination and a termination of benefits. Plaintiff argues, therefore, that the § 404.1594's medical improvement standard applies to the termination portion of a closed period determination, just as it would in a traditional termination proceeding. A split of authority exists on this issue. *Compare Chrupcala v. Heckler*, 829 F.2d 1269, 1274 (3rd Cir.1987) (holding that "[f]airness would certainly seem to require an adequate showing of medical improvement whenever an ALJ determines that disability should be limited to a specific period.") *with Ness v. Sullivan*, 904 F.2d 432, 434 n. 4 (8th Cir.1990) (holding that the normal sequential evaluation process and not the medical improvement standard applies in closed period cases). The Tenth Circuit, in *Pittser v. Apfel*, 132 F.3d 43 (10th Cir.1997), in an unpublished opinion, noted that Plaintiff argued in a closed period case that the Commissioner had the burden to establish that Plaintiff's disability ceased and must consider the medical improvement.

January and February of 1993 and was therefore not entitled to benefits for those months. [R. at 13].

The *Pittser* court referred to the Eighth Circuit opinion in *Camp v. Heckler*, 780 F.2d 721, 721–22 (8th Cir.1986) in declining to adopt Plaintiff's argument.

In accord with the Eighth and Tenth Circuit Courts of Appeals, the Court is inclined to conclude that the ALJ is not required to abide by the full dictates of the "medical improvement standard." Regardless, the Court finds that the issue does not have to be resolved. Initially, the Court does not perceive that a substantially different result would occur in this case regardless of whether the traditional five step sequential evaluation process[7] is applied or the medical improvement standard is applied. The ALJ's findings contain conclusions that Plaintiff underwent medical improvement and was able to work after the medical improvement. [R. at 21].

Pursuant to 20 C.F.R. § 404.1594, the following evaluation process must be followed to terminate disability benefits:

1. Is the claimant engaged in substantial gainful activity? [Step one of the traditional sequential evaluation process]. If he is, disability benefits will be terminated.

2. Does the claimant have an impairment which meets or equals the severity of an impairment in the "Listings"? *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1. [Step three of the traditional sequential evaluation process]. If he does, disability benefits will be continued.

3. Has the claimant experienced "medical improvement"? If not, disability benefits continue.

   a. Medical improvement is defined as "any decrease in the medical severity" of the claimant's impairments since the last disability determination. "A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with [the claimant's] impair--

ment(s)." 20 C.F.R. § 404.1594(b)(1).

4. Looking only at the impairments present at the last disability determination, has the claimant's medical improvement resulted in an increase in the claimant's residual functional capacity ("RFC") since the last disability determination? If not, disability benefits will continue?

5. Do any exceptions to the application of the medical improvement standard apply? If an exception applies, the Secretary is relieved of her burden of showing medical improvement, and disability benefits will be terminated. None of the exceptions are applicable in this case. (None of the exceptions apply to this case.) *See* 20 C.F.R. § 404.1594(d) and (e).

6. Looking at all of the claimant's current impairments, not just those present at the last disability determination, are these impairments severe? [Step two of the traditional sequential evaluation process]. If not, disability benefits will be denied.

7. Looking at all of the claimant's current impairments, not just those present at the last disability determination, can claimant perform his past relevant work? [Step four of the traditional sequential evaluation process]. If claimant can, disability benefits will be terminated.

8. Looking at all of the claimant's current impairments, not just those present at the last disability determination, does claimant have the RFC to perform an alternative work activity in the national economy? [Step five of the traditional evaluation process].

20 C.F.R. § 404.1594(f).

The Court concludes that even if the ALJ was required to follow the medical improvement standard, substantial evidence supports the ALJ's decision that Plaintiff achieved medical improvement.

---

**7.** *See,* footnote 4, *supra.*

### RFC not Supported by Substantial Evidence

Plaintiff asserts that the ALJ's RFC findings are based on an incomplete consideration of Plaintiff's impairments. Plaintiff provides no specifics.

The ALJ concluded that Plaintiff could perform a full range of sedentary or a narrow range of light work with the additional limitation of no prolonged standing or prolonged use of his feet or legs. [R. at 17, 21].

A Residual Functional Capacity Assessment ("RFC Assessment") completed by Dr. Thurma Fiegel on July 10, 1992, indicated that Plaintiff could occasionally lift 20 pounds, frequently lift ten pounds, stand or walk six out of eight hours, and sit six out of eight hours. [R. at 75]. An RFC Assessment completed by Dr. Paul Woodcock on July 13, 1993 noted that Plaintiff could occasionally lift ten pounds, frequently lift five to ten pounds, stand two out of eight hours, and sit six out of eight hours. Plaintiff additionally was reported as being able to ambulate without aide, and having good range of motion at his knees.

The Court has reviewed the record and concludes that substantial evidence supports the ALJ's conclusions regarding Plaintiff's RFC.

### Consideration of Pain and Mobility

Plaintiff asserts that the ALJ failed to appropriately consider Plaintiff's complaints of pain and Plaintiff's limited mobility.

The ALJ analyzed Plaintiff's complaints of pain but determined based on numerous factors, including, several inconsistent statements by Plaintiff, Plaintiff's infrequent visits to the doctor, the limited medication (aspirin) which Plaintiff took, and Plaintiff's failure to attend physical therapy sessions, that Plaintiff's testimony regarding his pain was not fully credible. The ALJ's analysis is supported by the record.

### Consultative Examiners/Light Work

Plaintiff further asserts that a consultative examination done by Steven Lee, M.D., and a consultive examination by Terrence Grewe, D.O. establish that Plaintiff cannot sit or stand for six hours out of an eight hour day.

Dr. Lee examined Plaintiff July 7, 1993. [R. at 242]. After an examination, Dr. Lee concluded:

> This young man basically was healthy with the exception of multiple injuries with subsequent deformity of both knees, malalignment of the fracture and some difficulty with walking. At the present time he is wearing a brace on the right leg. He could not tolerate prolonged standing and he apparently could not tolerate prolonged walking. On a short distance he seemed to be able to walk fairly steadily. He was advised to seek alternative employment because he was no longer able to work as a construction worker. He expresses interest in becoming a trained mechanic for motorcycle repair with an interest to go to a training school for motorcycle repair type of job. This young man appeared to be quite pleasant and I believe he might be motivated to seek alternative occupation and training. Occupational rehabilitation probably will be worthwhile to explore for him.

[R. at 244]. Dr. Lee's assessment is not inconsistent with the findings of the ALJ.

Dr. Grewe examined Plaintiff on June 15, 1994. He noted that Plaintiff reported to him that he could walk only three to six blocks and could stand only one to two hours. [R. at 249]. Dr. Grewe reported arthritis secondary to trauma and multiple trauma of the lower extremities secondary to a motorcycle vehicle accident. [R. at 250]. Dr. Grewe's assessments are not inconsistent with the ALJ's findings.[8]

---

8. Plaintiff does not assert that the ALJ erred in his evaluation of the medical report of Michael Farrar, D.O. Dr. Farrar concluded that Plaintiff was 100 percent disabled and unemployable. [R. at 312]. The ALJ adequately discusses Dr. Farrar's conclusions. In addition, Dr. Farrar does not limit his conclusions to Plaintiff's physical limitations. Rather, Dr. Farrar bases his opinion, in part, on Plaintiff's lack of education, training and experience. [R. at 312]. These conclusions obviously invade the province of the ALJ. The Court concludes that the ALJ appropriately evaluated the evidence provided by Dr. Farrar. In addition, as noted, Plaintiff does not address this as an error on appeal.

### Evidence to Support RFC

Plaintiff notes that the ALJ made his decision at Step Five and therefore was required to have evidence to support his conclusions. The record contains two RFC Assessments which support the conclusion of the ALJ that Plaintiff can do sedentary work.

### Limitations Posed to Vocational Expert

Plaintiff additionally asserts that the ALJ failed to pose all appropriate limitations in his question to the vocational expert. The ALJ provided several sedentary and light jobs which an individual who cannot stand for prolonged periods of time and cannot use his feet or legs could.perform. The record substantiates the ALJ's findings. [R. at 61].

Plaintiff states that if all of Plaintiff's limitations are posed in a question to the vocational expert no jobs exist which Plaintiff can perform. However, an ALJ is not required to accept all of a plaintiff's testimony with respect to restrictions as true, but may pose such restrictions to the vocational expert which are accepted as true by the ALJ. *Talley v. Sullivan*, 908 F.2d 585, 588 (10th Cir.1990). *See also Evans v. Chater*, 55 F.3d 530, 532 (10th Cir.1995) (an ALJ need include only those limitations in the question to the vocational expert which he properly finds are established by the evidence).

### Conflict with the DOT

Plaintiff further asserts that a conflict occurred between the ALJ and the DOT and that the DOT controls. Assuming Plaintiff's argument as true, that would eliminate only the job of "hand packer." [9] The ALJ additionally found that Plaintiff could work in sedentary or light assembly or cashier jobs. The ALJ's conclusion that work exists which Plaintiff is capable of performing is supported by substantial evidence.

### Credibility and Kepler

Plaintiff finally asserts that the ALJ failed to appropriately address the Plaintiff's credibility in accordance with *Kepler v. Chater*, 68 F.3d 387 (10th Cir.1995). The ALJ addressed Plaintiff's credibility and provided numerous reasons for discounting Plaintiff's subjective complaints. The ALJ's decision is in accord with *Kepler*.

Accordingly, the Commissioner's decision is AFFIRMED.

---

9. This issue has not yet been decided in a published Tenth Circuit opinion. This Court previously addressed this issue in *Simmons v. Chater*, 950 F.Supp. 1501 (N.D.Okla.1997), concluding that the DOT does not "control." *See also Conn v. Secretary of Health & Human Services*, 51 F.3d 607, 610 (6th Cir.1995) ("[W]hile the ALJ may take judicial notice of the classification in the Dictionary, the ALJ may accept testimony of a vocational expert that is different from information in the Dictionary of Occupational Titles.... The social security regulations do not require the Secretary or the expert to rely on classifications in the Dictionary of Occupational Titles.") (citations omitted).